**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**William A. WALKER,**
**Defendant-Appellant.**

**No. 76–1255.**

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted Jan. 27, 1977.

Decided June 24, 1977.

Michael S. Axt, Asst. Federal Public Defender, Denver, Colo. (Daniel J. Sears, Federal Public Defender, Denver, Colo., on brief), for defendant-appellant.

Jerre W. Dixon, Asst. U. S. Atty., Denver, Colo. (James L. Treece, U. S. Atty., Denver, Colo., on brief), for plaintiff-appellee.

Before LEWIS, Chief Judge, and BREITENSTEIN and SETH, Circuit Judges.

LEWIS, Chief Judge.

Defendant Walker appeals a judgment of conviction and sentence entered upon a jury verdict of guilty to one count of knowingly obtaining and exercising control over $1786 of government funds in the possession of the Lowry Air Force Base Officer's Club in Denver, Colorado, in violation of the Assimilative Crimes Act, 18 U.S.C. §§ 7, 13, and the Colorado theft statute, § 18–4–401, Colo.Rev.Stats.Ann. (1973).[1] The questions presented on appeal are whether the retrial from which this conviction and sentence arose was barred by principles of former jeopardy, whether the trial court erred in refusing to provide additional instructions requested by the jury during its deliberations, and whether Walker was improperly indicted under the Assimilative Crimes Act.

I.

On August 15, 1975, one Joyce Wright, a cashier at the Lowry Air Force Base Officer's Club, reported a robbery of $1786. Wright and defendant Walker, with whom she was living at the time of the reported robbery, were subsequently indicted under the Assimilative Crimes Act, 18 U.S.C. §§ 7, 13, for knowingly obtaining and exercising control over the personal property of another in violation of the Colorado theft statute, § 18–4–401, Colo.Rev.Stats.Ann. (1973), the government alleging the robbery was "staged." Wright was convicted and sentenced upon her plea of guilty. Walker was brought to a jury trial on December 9, 1975.

During the first day of Walker's trial a key government witness, Joanna London,

---

1. The indictment under which Walker was charged was drafted in the conjunctive "obtained and exercised control," whereas the Colorado theft statute is worded in the disjunctive "obtains or exercises control." The effect of this conjunctive/disjunctive distinction is considered in part II, infra.

refused to testify after having taken the stand. Acting upon the representations of counsel for the government that Ms. London had been threatened and warned against testifying by Walker's friends and relatives, the trial court called a recess and appointed counsel for Ms. London. After Ms. London had been afforded an opportunity to confer with counsel, court was re-convened outside the presence of the jury. Ms. London was again placed on the stand, testified she knew and could identify Walker, but refused to answer further questions despite a direct order of the court to do so. When the preliminary attempts by the government to lay a foundation for the admission of her prior statement to an FBI agent proved unsuccessful, the witness was excused and placed in protective custody. As the witness attempted to leave the courtroom she was accosted by Walker's friends and relatives in the hallway and the assistance of the marshals was required to effect her departure. The jury was then recalled and after the government had presented the remainder of its case, court was again recessed. The following morning court was reconvened outside the presence of the jury. After being informed by Ms. London's court-appointed counsel that in his opinion his client was prepared to testify, the jury was brought in and Ms. London recalled. The witness again testified that she knew and could identify Walker, but refused to respond to additional questions in defiance of further orders from the court to do so. The witness then attempted to leave the courtroom, but was restrained from doing so by the marshals. The court thereupon declared a mistrial stating, "I do not see how any jury could overlook what this jury has seen." The court found that the events that had transpired had produced an "aura of intimidation" precluding a fair trial either for Walker or for the government. Walker advised the court he did not consider a mistrial necessary and was willing to advise the witness she had his permission to testify. The court denied this request and proceeded to make an extensive record of the grounds on which the mistrial was granted.[2]

Walker was retried on January 5, 1976, before a different trial judge, the original trial judge having recused himself at Walker's request. Walker's motion to dismiss based on former jeopardy was denied and testimony essentially the same as that presented during the first trial was adduced. Ms. London was again called as a government witness and testified Walker had admitted to her that he and Joyce Wright had planned the "staged" robbery and that he had gone to Lowry Air Force Base to "pick up" the monies previously taken by Joyce Wright. At the conclusion of the government's case the trial court entered a judgment of acquittal on a second count of the indictment alleging a similar staged robbery at a later date. Walker then called as his sole witness Joyce Wright, who testified she was responsible for the taking of the funds from the Officer's Club and that Walker had nothing to

**2.** On appeal Walker contends the mistrial might have been avoided had the government properly offered Ms. London's prior statement to an FBI agent under Fed.R.Evid. 804(a)(2). This rule merely defines "unavailable witness" to include a witness who "persists in refusing to testify concerning the subject matter of his [prior] statement despite an order of the court to do so." Although it appears that Ms. London would satisfy this definition, before her prior statement would be admissible it must be shown to fall within one of the exceptions to the hearsay rule provided in rule 804(b). The government points out that Ms. London's statement to an FBI agent does not arise to the level of "former testimony" as defined in rule 804(b)(1), and on the basis of the record before us we have no basis for determining whether any of the other exceptions specified in rule 804(b) could have been satisfied. The government also points out that the prior statement was temporally too far removed from the time the conversation described therein took place to qualify as a past recollection recorded under Fed.R.Evid. 803(5), and that the witness refused to acknowledge the accuracy of the statement. Again we have no basis for ruling on these contentions. Nor do we find any basis in the record to support Walker's additional contention that the mistrial was declared in order to provide the government time in which to "strengthen its case," impliedly by determining how Ms. London's prior statement could have been successfully introduced. Accordingly we find Walker's contentions without merit.

do with it. The case was submitted to the jury and a verdict of guilty was returned.

On appeal Walker renews his contention that the retrial was barred by principles of former jeopardy since the mistrial was improperly granted over his objection. It is well settled that where a mistrial is granted over defendant's objection, the defendant may be retried only if "there is a manifest necessity for the [mistrial], or the ends of public justice would otherwise be defeated," *United States v. Perez,* 9 Wheat. 579, 580, 6 L.Ed. 165, or, more precisely, if "the public's interest in fair trials designed to end in just judgments" would otherwise be defeated. *Wade v. Hunter,* 336 U.S. 684, 689, 69 S.Ct. 834, 93 L.Ed. 974; *Illinois v. Somerville,* 410 U.S. 458, 461, 93 S.Ct. 1066, 35 L.Ed.2d 425; *United States v. Jorn,* 400 U.S. 470, 481, 91 S.Ct. 547, 27 L.Ed.2d 543; *Gori v. United States,* 367 U.S. 364, 368–69, 81 S.Ct. 1523, 6 L.Ed.2d 901; *Simmons v. United States,* 142 U.S. 148, 153–54, 12 S.Ct. 171, 35 L.Ed. 968. In adhering to this "manifest necessity" test, the Court has consistently "abjure[d] the application of any mechanical formula by which to judge the propriety of declaring a mistrial in the varying and often unique situations arising during the course of a criminal trial." *Illinois v. Somerville, supra,* 410 U.S. at 462, 93 S.Ct. at 1069. Rather, the Court has afforded broad discretion to the trial judge, "who is best situated intelligently to make such a decision," to determine after taking "all circumstances into account" whether the ends of public justice require the declaration of a mistrial without the defendant's consent and even over his objection. *Gori v. United States, supra,* 367 U.S. at 368, 81 S.Ct. 1526.

In the case at bar the trial judge was in the best position to observe the demeanor of the reluctant witness and to assess the effects of the extra-judicial disturbances on the jury. Assuming as we must that the defendant was in no way responsible for the disturbances or the intimidating acts directed toward the witness, our review of the extensive record compiled by the trial judge convinces us there was no abuse of discretion in the trial court's finding that the "aura of intimidation" generated by the witness's obvious reluctance to testify, her apparent fear for her personal safety, and the disturbances within and without the courtroom precluded the possibility of a fair trial either for the defendant or the government. Moreover, every effort was made to secure the witness's testimony without exposing the jury to potentially prejudicial occurrences and nothing appears in the record to support a claim that the incidents leading to the declaration of a mistrial were the result of either prosecutorial or judicial misconduct. *Cf. United States v. Jorn,* 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (judicial misconduct); *Downum v. United States,* 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100 (prosecutorial negligence). Since there was no abuse of discretion on the part of the trial court in the grant of the mistrial, Walker's motion to dismiss on the basis of former jeopardy was properly denied at the commencement of the retrial.

II.

During the course of its deliberations the jury, through its foreman, sent the following note to the trial judge requesting additional instructions:

Does the defendant have to be found guilty on *all counts* of the indictment.(sic) THE (sic) question is: did knowingly obtain and excerise (sic) control.(sic) &

Or should it read and/or

The trial judge responded, also by note: "I cannot answer the request contained in your note. You must rely upon your memories as to the instructions given." Nothing appears in the record to indicate how these communications were exchanged or whether Walker and his counsel were advised of the jury's communication and afforded an opportunity to be heard before the trial court responded. Indeed the two notes were not included in the original record, but were added as a supplemental record upon defendant's motion approximately three and one-half months after the conclusion of the trial.

Although Walker does not specifically raise this issue on appeal, Fed.R.Crim.P. 43 guarantees a defendant the right to be present "at every stage of the trial including the impaneling of the jury and the return of the verdict." In ruling on the applicability of this rule to cases in which communications are received from the jury during the course of its deliberations, the Supreme Court has held:

> Cases interpreting the Rule make it clear, if our decisions prior to the promulgation of the Rule left any doubt, that the jury's message should [be] answered in open court and that [defendant's] counsel should [be] given an opportunity to be heard before the trial judge respond[s].

*Rogers v. United States,* 422 U.S. 35, 39, 95 S.Ct. 2091, 2095, 45 L.Ed.2d 1. Failure to follow this procedure has been held to constitute plain error whether or not the issue is specifically raised on appeal. *Id.,* at 41, 95 S.Ct. 2091. Nevertheless, reversal is not required in cases where the violation of rule 43 represents "harmless error." *Id.,* Fed.R. Crim.P. 52(a). We therefore consider the possible prejudice to defendant arising from the procedure followed by the trial court.

The note sent by the jury indicates at least two possible areas of confusion with respect to the offense charged. The inquiry regarding the necessity of finding defendant "guilty on *all counts* of the indictment" suggests the jury may have been confused with respect to the court's instruction that the second count of the indictment was dismissed. More importantly, however, the query regarding the proper wording of the indictment, "THE (sic) question is: did knowingly obtain and excerise (sic) control.(sic) & Or (sic) should it read and/or," raises the possibility that the jury was confused as to the essential elements of the offense. It is also possible that the jury may have been confused on both of these points. In order to determine the nature and source of this potential confusion, however, it is necessary to review several events prior to the commencement of the jury's deliberations.

The indictment returned against defendant charged that he did "knowingly obtain *and* exercise control" over certain government funds in the possession of the Lowry Air Force Base Officer's Club in violation of the Assimilative Crimes Act and section 18–4–401, Colo.Rev.Stats.Ann. (1973). However, the language of the Colorado statute provides that a person commits theft by "knowingly obtaining *or* exercising control" over the property of another. This conjunctive/disjunctive distinction becomes important because at one point the trial court instructed the jury in the conjunctive language of the indictment and at another in the disjunctive language of the statute. In addition, the jury was advised that they would be furnished with a copy of the indictment (drafted in the conjunctive) during their deliberations, but that they would be required to rely on their memories for the court's instructions. The possibility for confusion resulting from the conflicting instructions is heightened by the fact the jury was charged and dismissed at 4:45 p. m. on January 5, 1976, but did not begin their deliberations until approximately 9:00 a. m. on January 6, at which time they apparently were furnished with a copy of the indictment.

Walker asserts these contradictory instructions may have confused the jury regarding the essential elements of the offense, as indicated by the wording of their note, and that on the basis of the evidence presented the jury could have found him guilty of "aiding and abetting" Joyce Wright by picking up the monies she had stolen or by exercising control over these monies after she had stolen them, without finding that he participated in the act of physically taking the monies from the club. Walker therefore submits the trial court erred in refusing to further instruct the jury.

The government responds that any confusion resulting from the instructions and indictment could have only inured to Walker's benefit since all that was required by the Colorado statute was a finding that he obtained *or* exercised control

over the monies. Thus, even if the jury had erroneously assumed that the conjunctive formulation of the indictment was correct, this would merely have increased Walker's chances of acquittal. This argument overlooks the fact, however, that Walker was not charged simply with a violation of the Colorado theft statute, but rather with a violation of the federal Assimilative Crimes Act with the Colorado statute merely providing the definition of the offense. By its express terms the Assimilative Crimes Act is applicable only where the act charged is "not made punishable by any enactment of Congress." 18 U.S.C. § 13; *United States v. Patmore*, 10 Cir., 475 F.2d 752. And, as the government has conceded on appeal, the act charged by the indictment is made punishable by the federal theft statute, 18 U.S.C. § 661. Appellee's Brief at 16. *Clark v. United States*, 4 Cir., 267 F.2d 99. The operative language of the federal theft statutes provides: "Whoever . . . *takes and carries away,* with intent to steal or purloin, any personal property of another . . . ." (The effect of indictment under the Assimilative Crimes Act rather than under the applicable federal theft statute is discussed in part III, *infra*.) Thus, a finding that Walker merely "exercised control over" the monies after they were stolen from the Officer's Club by Joyce Wright would not be sufficient to support a conviction under the federal statute. We therefore are unable to conclude that the jury's expressed confusion over the proper wording "of the indictment" was "harmless" under the circumstances of this case. Similarly, although the submission of additional instructions after the jury has retired is ordinarily a matter for the sound discretion of the trial judge where the closing instructions are unequivocal, *United States v. Jackson*, 10 Cir., 482 F.2d 1167, 1177, *cert. denied*, 414 U.S. 1159, 94 S.Ct. 918, 39 L.Ed.2d 111, where the closing instructions are conflicting and the "jury makes explicit its difficulties a trial judge should clear

them away with concrete accuracy." *Bollenbach v. United States*, 326 U.S. 607, 612–13, 66 S.Ct. 402, 90 L.Ed. 350. This is particularly important where as here the jury's communication is susceptible of differing interpretations. *United States v. Schor*, 2 Cir., 418 F.2d 26, 30; *Powell v. United States*, 9 Cir., 347 F.2d 156, 157. Had the trial court recalled the jury and read the inquiry in open court in the presence of defendant and his counsel, there is a substantial likelihood that the exact nature of the jury's difficulty could have been determined and that with the assistance of counsel appropriate supplemental instructions could have clarified the jury's uncertainty. We are therefore unable to conclude that the procedure followed by the trial court was "harmless error." The judgment of conviction must therefore be reversed.

### III.

As previously noted, the government concedes on appeal that Walker was improperly charged under the Assimilative Crimes Act rather than under the federal theft statute. It is well settled that an incorrect statutory reference in the indictment does not require reversal where all of the essential elements of the correct statute are otherwise covered, but that any sentence imposed in excess of that allowed under the correct statute must be vacated and the case remanded for resentencing.[3] *United States v. Chaussee*, 7 Cir., 536 F.2d 637, 644–45; *United States v. Word*, 8 Cir., 519 F.2d 612, 618, *cert. denied* 423 U.S. 934, 96 S.Ct. 290, 46 L.Ed.2d 265; *United States v. Patmore*, 10 Cir., 475 F.2d 752, 753. Since we have determined that the disjunctive wording of the Colorado theft statute is not the equivalent of the conjunctive wording of the federal theft statute, we need not decide at this juncture whether the conjunctive language of the indictment as drawn together with its additional alle-

---

**3.** Walker was committed to the custody of the Attorney General for imprisonment for a period of eight years. The maximum sentence provided by 18 U.S.C. § 661, however, is five years.

Thus, as the government concedes on appeal, this sentence must be vacated regardless of our disposition of the underlying conviction.

gations adequately covered the essential elements of the federal offense. Reversed and remanded for further proceedings consistent with the opinion expressed herein.