Mario TORRES, Appellant,

v.

The STATE of Texas, Appellee.

No. 66562.

Court of Criminal Appeals of Texas, Panel No. 2.

April 15, 1981.

---

Gregory B. Pine, El Paso, for appellant.

Steve W. Simmons, Dist. Atty., and R. Bradford Stiles, Asst. Dist. Atty., El Paso, Robert Huttash, State's Atty., Austin, for the State.

Before DALLY, W. C. DAVIS and CLINTON, JJ.

## OPINION

DALLY, Judge.

This is an appeal from a conviction of the offense of aggravated assault; the punishment is imprisonment for two years.

The sole ground of error advanced by appellant is that the trial court erred in its sua sponte declaration of a mistrial. As a result, he says, retrial of this case is barred by the double jeopardy clause of the Constitutions of both the United States and Texas.

On the morning of April 30, 1980, a jury was empaneled and sworn and appellant pled not guilty to the offense of robbery. The State's first witness was the complainant, Jose Torres; he testified to some of the facts of the robbery. The State's second witness was Thomas Reyes and he testified that when he arrived at the scene of the offense he saw Torres lying on the ground surrounded by police officers and medical personnel. One week prior to trial at appellant's probation revocation hearing, however, Reyes testified that he had witnessed the actual commission of the offense; he testified that when he arrived at the scene of the offense he saw the appellant "beating up" Torres. After the State presented its last witness, the court recessed for lunch at which time the trial judge asked that an investigator from the prosecutor's office question Reyes about his change in testimony. When the court reconvened that afternoon, the trial judge conducted a hearing outside of the presence of the jury. At this hearing, Reyes testified he had erred in some of his statements before the jury because the truth was he had actually witnessed the appellant "beating up" Torres when he arrived at the scene of the offense. He stated that the error was due to his extreme tiredness and nervousness that morning and his decision not to get involved in the case. The trial judge, however, was of the opinion that Reyes had been intimidated into testifying falsely before the jury; his opinion was stated after the following proceedings transpired during the voir dire examination of Reyes:

"Q. [PROSECUTOR]: Have you ever been threatened by this Defendant or other members of his family?

"A. Well, I have always had problems with them. But just lately—but now I do not.

"Q. Well, why didn't you tell the truth this morning, sir?

"A. Well, like I said before I was tired, and I was nervous. You know, when you work on the fields since 4:00 in the morning and all—and I thought that I was going to be able to go and have breakfast right away. But what I am saying now is the truth.

" * * * * *

"Q. Have you ever had in the past before this incident occurred—have you ever had problems with this Defendant or other members of his family?

"A. With him and his brothers, you know, breaking windows and all. And I would call the police, and the police used to come over and see that the windows had been broken. Well, I couldn't really accuse them of doing this, because people would tell me who it had been that had done this. But I really didn't know.

"Q. A while ago did you talk out in the hallway with this man sitting next to me?

"A. Yes, we did.

"Q. And didn't you tell him that you were afraid to tell the truth on the stand this morning, because you were afraid of retaliation?

"A. Well, not with me. Because, you know, I have a family. What I really—I do not want to get into any difficulties. Because if anything ever happens to my family, I know that I'm going to end up by being in jail, because I'm not going to let things just go like that.

" * * * * *

"THE COURT: Have they [appellant's family or friends] said or done any-

thing to you this morning or to any other witness?

"MR. REYES: No. They haven't said anything to me.

"THE COURT: Have these people that you saw today intimidated you in any way prior to coming to this courtroom, and I mean within the last month or last week or last hour?

"MR. REYES: No. They have not intimidated me.

"MR. ROSADO [DEFENSE ATTORNEY]: Isn't it a fact, Mr. Reyes, that you just merely did not want to get involved in this case?

"MR. REYES: This is correct. The fact is that anything that has happened with him or with the others or anything that has gone by—well, it has gone by. It has happened, and now he's here with you all, and it's up to you all about what happens and—

"MR. ROSADO: May I ask the interpreter if in response to my question which was, in fact, you didn't want to get involved in this case, he said exactly?

"INTERPRETER: He said that is correct. Yes.

"MR. ROSADO: That is why he didn't want to get involved in this case? Mr. Reyes, the reason why your testimony was different this morning than it was let's say last week at the revocation hearing for Mario Torres is that you did not want to get involved in this case. Is that why your testimony was different this morning than it was last week at the revocation hearing?

"MR. REYES: Right. Now I am telling you what I said last week.

"BY MR. ROSADO:

"Q. But, Mr. Reyes, you have not been in any way threatened in this case by anyone to change your testimony; is that correct?

"A. This is like I am saying. This is what I do not want. These boys are all around. I have been asked, and they have asked me two or three times where do I work; what type

of work I do. Ask him where he work or anybody. This is what I do not know if anybody has ever told him.

"Q. These persons that you say have asked you where you work, don't they live in the neighborhood and know where you work?

"A. This is the thing that I want to know. How are we living? I do not want to get involved in problems, because the thing is that I travel long distances, to Pennsylvania and to New York. And I am sometimes away from home two or three weeks at a time, and I want to know how is my family going to be.

"Q. But, Mr. Reyes, you had that same concern last week, and you testified differently.

"A. And I continue to have it.

"Q. And you testified differently.

"A. What I said right now, and what I said last week is the same.

"Q. But what you said this morning was not the same.

"A. Well, as I have said before, this morning I was not all here.

"Q. So, the only reason you are giving this Court then for having a different testimony this morning from the other day, is the fact that you have been up since 4:00 and hadn't eaten breakfast; is that correct?

"A. This is exactly right."

The declaration of mistrial was then made following these comments by the court:

"THE COURT: All right. Let me say this to you, and it certainly is my opinion that this witness and others in this case have in some way—I don't know how—been intimidated. And I'd certainly like to get to the bottom of it. I want you to know that this is outside the hearing of the jury, and that's just my opinion of what I've seen and heard here today. If that is proven or if that can be done, I certainly want your office to take whatever steps are necessary to bring it to the forefront and get it in front of the grand jury or something, because I think it's a shame for these people to have to live in fear wherever this boy and his friends are living.

"MR. ROSADO: Your Honor, may I ask—since the Court has put that opinion in the record, obviously the appellate court will consider it. Can I ask the Court what evidence it has of any intimidation.

"THE COURT: The only evidence is what I've heard and seen here in the courtroom today. And let me say this to you, Mr. Rosado. Do you know that my opinion of it is exactly what I've heard. I have no authority over what this jury will do. I do not intend in any way to tell this jury to do something for or against your client in this case. But I certainly feel that this is something that needs to be looked into. And possibly you don't feel that way. But it seems to me like as an officer of this court you should want to find out whether or not, in fact, this is the situation and whether these people are, in fact, afraid to testify because of this boy and his family and whatever gang might be in that area. I think that you have a duty to the court and to the citizens of this town just as I do.

"* * * *

"MR. ROSADO: Your Honor, if the Court is correct, I agree. But the point is that this is all going into the record.

"THE COURT: It is going into the record because it is outside the presence of the jury, and I am requesting that the District Attorney look into it, because I honestly believe that possibly there is something to it.

"* * * *

"THE COURT: You can try this case any time, Mr. Rosado. And if you like, I'll let you have another judge try it. It doesn't matter to me about this case. But I'm still going to have the District Attorney's Office look into whether or not any of these witnesses have been

intimidated, if their families have been intimidated, or if anyone down there that is related or connected with this boy has intimidated any of these people that are here today to testify against him. Don't think for a minute that I'm going to back off of it. I'm serious about it, because I kind of like this town, and I'm sure going to do everything I can that's possible to clean it up. I'm not going to let a bunch of little fellows like him come in and intimidate witnesses that testify in this court. And it doesn't matter to me what the lawyers or anyone else says about it on appeal or anywhere else. Now, you can send that to them. That's outside the presence of the jury, and that's the way I feel about it."

The case was subsequently set to be retried before another judge in July, 1980. The appellant filed a special plea of former jeopardy that was overruled by the court. Thereafter the appellant pled guilty to the lesser included offense of aggravated assault, having been indicted for the offense of robbery.

The State argues that the double jeopardy clause of the Constitutions of both the United States and Texas does not bar it from retrying the appellant because: (1) the appellant consented to the mistrial and (2) there was a manifest necessity for the mistrial.

■ Once jeopardy attaches, as it did for appellant when the jury was empaneled and sworn to try this case, *Crist v. Bretz*, 437 U.S. 28, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978), *McElwee v. State*, 589 S.W.2d 455 (Tex.Cr.App.1979), the defendant possesses a valued right to have his guilt or innocence determined before the first trier of fact. *United States v. Scott*, 437 U.S. 82, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978); *Arizona v. Washington*, 434 U.S. 497, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978); *Wade v. Hunter*, 336 U.S. 684, 69 S.Ct. 834, 93 L.Ed. 974 (1949). An exception to this rule is made if the defendant consents to a retrial, or if a retrial before a new jury is mandated by some form of manifest necessity. *Arizona*

*v. Washington*, supra; *Illinois v. Somerville*, 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973); *United States v. Jorn*, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971); *United States v. Perez*, 22 U.S. (9 Wheat.) 579, 6 L.Ed. 165 (1824); *McClendon v. State*, 583 S.W.2d 777 (Tex.Cr.App.1979); *Chvojka v. State*, 582 S.W.2d 828 (Tex.Cr.App.1979).

■ Our first inquiry therefore is whether the appellant consented to a mistrial. In the course of Torres' testimony on redirect examination, he made a statement that the court ruled was inadmissible hearsay. The appellant asked the court to declare a mistrial. The court refused the appellant's request for a mistrial, but it did instruct the jury to disregard the statement. The State argues that this earlier request for a mistrial bars the appellant from subsequently challenging his reprosecution. We find no merit to this contention. Torres was the State's first witness and he was cut off before he was able to complete the hearsay statement. The record neither reflects that the trial judge referred to the appellant's prior motion for mistrial when he subsequently declared a mistrial during the voir dire examination of Reyes nor does it reflect that the appellant's prior motion for mistrial served as his basis for subsequently declaring a mistrial. See and compare *United States v. Pappas*, 445 F.2d 1194 (3d Cir. 1971). To the contrary, the record reflects that the basis of the trial judge's declaration of a mistrial pertained to his belief that Reyes had been intimidated; Torres' statement did not refer to the possibility of intimidation of witnesses.

■ In addition, the State argues that the appellant impliedly consented to be retried because he failed to object to the court's declaration of a mistrial. Consent need not be expressed, but may be implied from the totality of circumstances attendant to a declaration of mistrial. *United States v. Gori*, 367 U.S. 364, 81 S.Ct. 1523, 6 L.Ed.2d 901 (1961); *United States v. Smith*, 621 F.2d 350 (9th Cir. 1980); *United States v. Rich*, 589 F.2d 1025 (10th Cir. 1978). But before a failure to object constitutes an implied consent to a mistrial, a defendant

must be given an adequate opportunity to object to the court's motion. See *United States v. Gori*, supra; *United States v. Smith*, supra; *United States v. Goldstein*, 479 F.2d 1061 (2d Cir. 1973); *United States v. Goldman*, 439 F.Supp. 358 (D.C.N.Y.1977).

In the instant case, the appellant was represented by two attorneys, Greg Pine and David Rosado. After the trial judge had concluded with his comments, he questioned Pine about whether he (Pine) wanted appellant to be retried and Pine expressly stated that he wanted the trial to proceed. When the trial judge asked the same question of Rosado, he (Rosado) responded that before he could answer that question it would be necessary for him to consult with the appellant through the aid of the court's interpreter. Before Rosado had an opportunity to question the appellant, the trial judge stated,

> "Well, let me make it for you. We're going to call a mistrial, Mr. Rosado. Take the prisoner up to the jail. I want him on a $25,000 bond. We'll keep him up there, and we'll reset the case for a new hearing. In the meantime, Mr. Rosado, you find another judge to hear it. I'll transfer it to another judge."

Under these circumstances, we cannot say that the appellant in any manner consented to a mistrial. See *United States v. Gori*, supra; *United States v. Smith*, supra; *United States v. Rich*, supra; *United States v. Goldstein*, supra.

Our next inquiry is whether there was a manifest necessity for a mistrial. The general principles by which the correctness of a trial judge's sua sponte declaration of a mistrial must be judged were established in *United States v. Perez*, supra. Trial courts have the power to declare a mistrial, "whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated .... [T]he power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes" and in the exercise of "sound discretion." 22 U.S. (9 Wheat.) at 580. Most

recently, in *Arizona v. Washington*, supra, the Supreme Court again emphasized that because the mistrial decision affects a constitutionally protected right, there must be a "high degree" of necessity that trial come to an end and a reviewing court must determine that the trial judge did not act irrationally or irresponsibly, and that the mistrial order reflects the exercise of sound discretion. 434 U.S. at 514, 98 S.Ct. at 834.

Although each case must turn on its own facts, *Downum v. United States*, 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963), the determination of whether a trial judge exercised sound discretion normally requires the trial judge to consider less drastic alternatives to a mistrial and he must give adequate consideration to the defendant's double jeopardy right before declaring a mistrial. See *Cherry v. Director, State Bd. of Corrections*, 613 F.2d 1262 (5th Cir. 1980); *Grooms v. Wainwright*, 610 F.2d 344 (5th Cir. 1980); *Harris v. Young*, 607 F.2d 1081 (4th Cir. 1979); *United States v. MacQueen*, 596 F.2d 76 (2d Cir. 1979); *United States v. Pierce*, 593 F.2d 415 (1st Cir. 1979); *United States v. McKoy*, 591 F.2d 218 (3d Cir. 1979); *United States v. Horn*, 583 F.2d 1124 (10th Cir. 1978); *Dunkerley v. Hogan*, 579 F.2d 141 (2d Cir. 1978); *United States v. Starling*, 571 F.2d 934 (5th Cir. 1978). There is no constitutional violation if the trial judge fails to expressly state these considerations in the record so long as his basis for the mistrial order is adequately disclosed by the record. *Arizona v. Washington*, supra. Since the trial judge in the instant case failed to set forth any explicit finding of "manifest necessity," we must determine whether his mistrial order reflects the exercise of sound discretion in implicitly finding a "manifest necessity" for appellant's retrial.

In *United States v. Johnson*, 584 F.2d 148 (6th Cir. 1978), a mistrial was declared because of the firebombings of the homes of close relatives of two government witnesses. At a hearing held the morning after the bombings, the district court made a "finding that there has been sufficient problem of intimidation of witnesses' fami-

lies to make this a dangerous situation" and "that there is enough danger [to] declare a mistrial." The Sixth Circuit Court of Appeals upheld the district court's findings and stated, "[a] reasonable fear for the safety of witnesses or jurors clearly suffices as 'manifest necessity.'" 584 F.2d at 153. See also *United States v. Walker*, 557 F.2d 741 (10th Cir. 1977).

■ Assuming a reasonable fear for the safety of witnesses or jurors suffices as "manifest necessity," the evidence must support either an explicit or implicit finding of such reasonable fear if the trial judge's motion is to be upheld on appeal. See *United States v. Johnson*, supra; *United States v. Walker*, supra. See also *United States v. Sanders*, 591 F.2d 1293 (9th Cir. 1979); *United States v. Rich*, supra; *United States v. Horn*, supra; *Hogan v. Dunkerley*, supra; *United States v. Starling*, supra. In the instant case, the order granting the mistrial indicated the trial judge's belief that Reyes had been intimidated into changing his testimony; his conclusion, however, is unsupported by the evidence.

■ Despite Reyes' assurance that he had not been intimidated, the trial judge expressed his belief that "possibly" Reyes had been intimidated and he thereafter declared a mistrial without the appellant's consent. It is apparent from the record that Reyes feared the possibility of retaliation, but we cannot say that the trial court had before it the facts necessary to conclude that Reyes had been intimidated. See and compare *United States v. Jorn*, supra; *United States v. Johnson*, supra; *United States v. Walker*, supra. The trial judge gave no consideration to any less drastic alternatives or to the double jeopardy right of the appellant; the record does not reveal the manifest necessity for a mistrial. After jeopardy attached at the April 30 trial, appellant possessed a valued right to have the jury decide his case based upon the proof the State could adduce. We hold that the appellant's second prosecution violated the double jeopardy clause of the Constitutions of both the United States and Texas because his first trial improperly ended in a mistrial.

■ The State also urges that the trial judge properly declared a mistrial to disqualify himself from the trial because of his possible bias or prejudice against the appellant. We find no merit to this contention since its basis is not adequately disclosed by the record. See *Arizona v. Washington*, supra. Trial was before the jury and the trial judge specifically stated, "I will guarantee you that your client [appellant] will receive a fair trial in this Court." He also assured both parties that his opinion or beliefs would not affect any of his rulings.

The judgment is reversed and the cause is ordered dismissed.