

# NUMBERS 13-13-00313-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

DANIEL LYNE,                                          **Appellant,**

**v.**

THE STATE OF TEXAS,                                **Appellee.**

### On appeal from the 445th District Court of Cameron County, Texas.

# MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Benavides and Perkes Memorandum Opinion by Justice Perkes

Appellant Daniel Lyne was charged in a two-count indictment of indecency with a child and aggravated sexual assault of a child. *See* TEX. PENAL CODE ANN. §§ 21.11, 22.021(f)(1) (West, Westlaw through 2015 R.S.). Before trial, the State dismissed the aggravated sexual assault count and proceeded on the indecency count. A jury found appellant guilty of indecency with a child and assessed punishment at four years in the

Texas Department of Criminal Justice—Institutional Division, and a fine of $10,000.   By

one issue, appellant argues that the trial court erred by: (1) refusing to grant appellant's

request for a new venire and later, a mistrial; and (2) refusing to grant appellant's motion

for a new trial.   We affirm.

## I.   BACKGROUND

In 2007, the child complainant, A.M.[1], came to live with her aunt and uncle,

appellant, to attend school.   A.M. lived with appellant until March 2009.   In August 2010,

A.M. went to a clinic for a medical exam.   During the exam, A.M. made an outcry that

appellant had previously touched her.   After the outcry, A.M. underwent a forensic

interview where she provided more details about appellant's behavior.

### A.   Voir Dire

At the beginning of voir dire and in the presence of the jury panel, the trial court

judge introduced himself and began reading the indictment:

> [[COURT]:    Ladies and gentlemen of the jury panel, as I stated to you, the style of the case is State of Texas versus Daniel Lyne who is charged by indictment with the offense of aggravated sexual assault of a child, indecency —
>
> [DEFENSE]:   Judge, we would object to —
>
> [COURT]:    I'm sorry?
>
> [STATE]:    May we approach, Your Honor?
>
> [COURT]:    Yes.   Did I misread this?

Appellant objected to the trial court's mention of the dismissed aggravated sexual

assault of a child count, and a bench conference followed.   The trial court thereafter

---

[1] We refer to the complainant and her mother, L.H., by their initials to protect their anonymity.

denied appellant's request for a new jury panel but instructed the venire panel to disregard any comments that were made regarding the dismissed offense.

Later, after a break in the proceedings, a member of the venire panel noticed that the court's docket sheet on the door to the courtroom stated appellant was charged with aggravated sexual assault. The trial court instructed the venire panel that the docket sheet on the outside of the door had "nothing to do with this case", and that they were to disregard it.

## B. Trial Testimony

The trial proceeded with the presentation of evidence. During L.H.'s direct examination, the State's attorney made sidebar remarks that appellant's "Counsel made issues of when this happened, when this witness would have even known when a *sexual assault* occurred . . . . (emphasis added)." Appellant's counsel objected, and the trial court instructed the jury to disregard the sidebar remark and ordered it struck from the record. Appellant then moved for a mistrial, which the trial court denied. Shortly afterwards, the State's attorney made two more references to "sexual assault", drawing objections from appellant. After the State's attorney apologized, the trial court instructed the jury to disregard the question. The trial court denied appellant's further request for a mistrial.

The mother continued with her testimony, stating that she moved into appellant's home in October 2007, shortly after A.M. moved there. She explained that after she moved into appellant's home, she saw A.M. sitting on appellant's lap, with his hands on her legs or upper inner thighs. She did not report her observations. She lived with

3

appellant for approximately two years until March 2009. In August 2010, she took A.M. for a doctor's appointment. When the nurse checked A.M.'s groin area, A.M. reacted strongly and disclosed that appellant had touched her. The mother informed her husband, and they reported the incident to the police.

A.M. testified that she was in first grade at the time of the August 2007 incident. She had recently come to live with appellant—her uncle by marriage—and his wife in the United States, while her parents stayed in Mexico. A.M. testified that one night while at appellant's home, appellant came into her bedroom three times. She testified that the third time he came into her room, he pulled her pajama pants down and touched her "middle part." She did not tell anyone for several years. Shortly after her first report of the incident in August 2010, she was interviewed by a counselor. Without objection, the State published the video of the interview to the jury.

Appellant testified in his defense. During his testimony, he denied any sexual contact between A.M. and himself. On cross-examination, appellant agreed that he could not think of any motivation for A.M. to lie, but instead suggested another family member might have planted the memory of the event with A.M.

## C.     Motion for New Trial Testimony

Appellant timely filed a motion for a new trial, arguing that the mere mention of the sexual assault charge prejudiced the jury. At the hearing, appellant called two members of the venire panel. Both venire members testified that the phrase "aggravated sexual assault" conjured a gruesome image. One of the venire members explained: "[w]ell, I think I can be fair and everything, but it's (aggravated sexual assault) still in the back of

4

your mind." The other venire member stated: "if [aggravated sexual assault is] mentioned so many times to me, I don't think it's something that I can set aside. It's something that's going to follow me throughout trial."

The State argued that the curative measures—jury instruction, State's apology, and correct jury charge—were adequate to cure any error. In response, appellant argued the repeated references to the "aggravated sexual assault" caused cumulative harm. In addition, appellant further argued that the State's case relied solely on A.M.'s outcry statement—which was contradicted by appellant's testimony. The trial court denied appellant's motion for new trial.

## II.    REQUEST FOR MISTRIAL

By his first issue, appellant argues that the trial court erred by refusing to grant a mistrial due to the repeated references to "aggravated sexual assault" and "sexual assault" by both the trial court and State.[2]

### A.    Standard of Review

The standard of review of a trial court's grant or denial of a motion for mistrial is abuse of discretion. *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999). A trial court does not abuse its discretion when its decision is at least within the zone of reasonable disagreement. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990). We review the facts in the light most favorable to the ruling. *See State v. Cabrera*, 24 S.W.3d 528, 529 (Tex. App.—Corpus Christi 2000, pet. ref'd). It is an abuse

---

[2] Appellant also argues that the trial court erred by refusing to grant a new jury panel. Appellant offers no argument or authority to support his conclusion that he was entitled to a new jury panel. As a result, the issue is waived. *See* TEX. R. APP. P. 38.1.

of discretion to grant a mistrial where less drastic means are available.  *Brown v. State*, 907 S.W.2d 835, 839 (Tex. Crim. App. 1995) (en banc).

**B.      Applicable Law**

A mistrial is a severe remedy, and "[o]nly in extreme circumstances, where the prejudice is incurable, will mistrial be required."  *Hawkins v. State,* 135 S.W.3d 72, 77 (Tex. Crim. App. 2004) (en banc).  "A mistrial is the trial court's remedy for improper conduct that is 'so prejudicial that expenditure of further time and expense would be wasteful or futile.'"  *Id.* (quoting *Ladd,* 3 S.W.3d at 567).  "Therefore, a mistrial should be granted only in the cases where the 'reference was clearly calculated to inflame the minds of the jury or was of such damning character as to suggest it would be impossible to remove the harmful impression from the juror's minds.'"  *Young v. State,* 283 S.W.3d 854, 878 (Tex. Crim. App. 2009) (quoting *Rojas v. State,* 986 S.W.2d 241, 250 (Tex. Crim. App. 1998)).  Otherwise, sound discretion normally requires the trial judge to consider less drastic alternatives.  *Torres v. State,* 614 S.W.2d 436, 442 (Tex. Crim. App. 1981) (panel op.).  In determining whether a mistrial should be granted, three factors must be balanced:

1.  The severity of the misconduct (the magnitude of the prejudicial effect of the prosecutor's remarks);

2.  The measures adopted to cure the misconduct (the efficacy of any cautionary instruction by the judge); and

3.  The certainty of conviction absent the misconduct (the strength of the evidence supporting the conviction).

*Archie v. State,* 221 S.W.3d 695, 700 (Tex. Crim. App. 2007) (citing *Ramon v. State,* 159 S.W.3d 927, 929 (Tex. Crim. App. 2004)).

6

**C.    Analysis**

**1.  Severity of Misconduct**

Appellant argues that the mere mention of aggravated sexual assault of a child is "inflammatory per se", and in support, points to the two venire members' testimony as evidence of jury prejudice.   Appellant further argues that the State was conscious of the wrongdoing because it was the State that prevented introduction of the dismissed count by its motion in limine.

In support of his argument, appellant cites *State v. Cabrera*, where we affirmed the granting of habeas corpus relief because the State had improperly introduced evidence regarding the truthfulness of the child victim.   *See* 24 S.W.3d at 532.   During its opening statement, the State referred to the child victim's veracity.   *Id.*   After the court discussed the prohibition against opinion testimony regarding the truthfulness of the child victim, the State asked two witnesses open-ended questions about their impressions or opinions regarding the child.   *Id.*   The witnesses gave opinions related to the truthfulness of the child victim.   *Id.*   Based upon those circumstances, we concluded the record supported the trial court's finding that the cumulative effect of the references to the truthfulness of the child victim caused the degree of incurable prejudice that would justify a mistrial.   *Id.* Consequentially, we held that the trial court did not abuse its discretion in granting a mistrial.   *Id.*

Inflammatory comments, however, do not necessarily create prejudice.   *See Hawkins,* 135 S.W.3d at 78.   Rather, we look to determine whether the references were made intentionally or mistakenly.   *See Cabrera*, 24 S.W.3d at 532.   In *Cabrera*, the

prejudice came from the State's repeated and deliberate attempts to bolster the credibility of the child victim at the expense of the defendant and despite repeated warnings from the trial court. *See id.* Here, however, appellant was previously indicted for aggravated sexual assault of a child, and the trial court could have reasonably found that the references to the previous indictment were mistakes rather than intentional acts. Also, unlike *Cabrera*, neither the State nor the trial court referred to the alleged sexual assault with regards to the evidence or credibility of any witnesses. The first reference to the allegation of aggravated sexual assault came from the trial court prior to the commencement of voir dire, and was clearly a reading mistake. Similarly, the State's attorney twice referred to the dismissed sexual assault, but then immediately clarified that she meant the indecency charge. The prosecutor's comments did not introduce additional facts into the record. Given that the jury was in a position to hear the correct charge against appellant, and the correct charge was given, we conclude that the magnitude of any potential prejudice is low.

## 2. Curative Instructions

Appellant argues that the trial court's curative instructions were erroneous. The trial court instructed the jury on the correct charge after it misread the indictment:

> [COURT]: Ladies and gentlemen, I have misread a portion that was not to be part of this document. You're to disregard any comments I've made so far as to what the underlying offense is. The correct offense, and once again, is only limited to indecency with a child, sexual conduct. That is the only offense, no other offense. You are to disregard any erroneous comment that I made from a misreading of a document.

8

After the State's attorney mentioned the dismissed sexual assault, the trial court gave the following instructions:

> [COURT]: The sidebar remarks are to be stricken from the record. Jury, once again, nothing has been proven. Disregard the sidebar remark.
>
> . . . .
>
> The Jury is to disregard the statement by [the State] as to the sexual assault. Sidebar remarks are not admitted. They're not evidence. They're not testimony. Disregard it. It is to be stricken from the record.

After the State's second objected-to mention of the alleged sexual assault, the trial court instructed the jury:

> [COURT]: For the record, the question has been previously asked when the alleged incidents occurred, so the – [State], you may ask those questions. [Defense] asked the same question. I'll allow that. However, the issue -- phrasing the term sexual assault, and that's not been proven and you know that very well, that's going to be stricken from the record. The Jury is instructed to disregard the question. Once again, nothing has been proven as of yet, however, the parties are free to ask when and how many times these alleged incidents occurred.

Appellant claims that the first instruction is erroneous because the trial court said the charge was "sexual conduct," instead of "sexual contact." Appellant further argues that by instructing the jury that "nothing has been proven", the trial court incorrectly implied that there might later be evidence of a sexual assault. Appellant also claims, without elaboration, that the trial court's third instruction is "egregious." We disagree.

Appellant failed to object to the trial court's curative instructions, and even if he did, those given by the trial court were adequate. *Compare Unkart v. State*, 400 S.W.3d 94,

9

99 (Tex. Crim. App. 2013) (holding general rule is that an improper judicial comment must be preserved at trial), *with Blue v. State*, 41 S.W.3d 129, 133 (Tex. Crim. App. 2000) (en banc) (plurality op.) (granting relief on an improper-judicial-comment complaint that was not preserved at trial, where plurality focused on comments affecting defendant's presumption of innocence).   Each of the trial court's instructions explicitly instruct the jury to disregard any reference to the alleged sexual assault.   *See Archie*, 221 S.W.3d at 700 (holding trial court's curative instructions essentially told jury to disregard prosecutor's statement on defendant's refusal to testify; instruction sufficiently ameliorated any potential harm).   It is clear the trial court intended to protect appellant's rights, and we conclude that there is no reversible error in the trial court's instructions.

Along with the trial court's instructions, the prosecutor apologized for referring to the alleged sexual assault and corrected herself.   The swiftness of the prosecutor's apology is significant since the jury would have little time to dwell on the misstatement. The prosecutor's apology, combined with the trial court's instructions, served to ameliorate any potential harm from the improper reference.   Further, the jury charge correctly instructed the jurors to disregard any statements by the attorneys that were unsupported by the evidence.   Appellant's sentence of four years' was on the lower end of the punishment range—two to twenty years.   Appellant had no prior criminal history. Under the circumstances, the trial court's curative instructions were effective.   Had the jury believed that appellant committed an aggravated sexual assault of the child, it likely would have sentenced appellant differently.   Any effect of the improper reference was

10

cured by the apology and instructions to disregard. *See Hawkins*, 135 S.W.3d at 85; *see also Brown v. State*, 769 S.W.2d 565, 567 (Tex. Crim. App. 1989) (en banc).

### 3. Strength of Evidence Supporting Conviction

The evidence against appellant included A.M.'s testimony that appellant touched her "middle part" as well as testimony from the nurse and L.H. about A.M.'s outcry. During his testimony, appellant denied inappropriately touching A.M. and claimed A.M.'s father influenced her "in some way." However, he was unable to explain why A.M. would be motivated to lie.

The jury, hearing A.M.'s testimony and watching A.M.'s forensic interview, was in the best position to gauge her credibility. *See Lancon v. State*, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008) (explaining that fact-finder is exclusive judge of credibility of witnesses and of weight to be given to their testimony); *see also Wyatt v. State*, 23 S.W.3d 18, 30 (Tex. Crim. App. 2000) (holding that reconciliation of conflicts in evidence is within fact-finder's exclusive province).

Given the strength of the evidence against appellant, the prosecutor's apology, the trial court's instructions to the jury to disregard, and the minimal likelihood of prejudice caused by the reference, we do not find that the trial court abused its discretion in denying a mistrial. *See Ramon v. State*, 159 S.W.3d 927, 932 (Tex. Crim. App. 2004) (en banc). Appellant's first issue is overruled.

### III. MOTION FOR NEW TRIAL

By his second issue, appellant argues the trial court erred by refusing to grant his motion for a new trial. Appellant's sole ground for new trial is his complaint about the references to the dismissed charge of aggravated sexual assault of a child.

**A.     Standard of Review**

An appellate court reviews a trial court's denial of a motion for new trial under an abuse of discretion standard. *Holden v. State,* 201 S.W.3d 761, 763 (Tex. Crim. App. 2006). We do not substitute our judgment for that of the trial court; rather, we decide whether the trial court's decision was arbitrary or unreasonable. *Id.* A trial court abuses its discretion in denying a motion for new trial only when no reasonable view of the record could support the trial court's ruling. *Id.*

**B.     Applicable Law**

A trial judge does not have authority to grant a new trial unless the first proceeding was not in accordance with the law. *See State v. Herndon*, 215 S.W.3d 901, 907 (Tex. Crim. App. 2007). A trial court cannot grant a new trial on mere sympathy, an inarticulate hunch, or simply because he personally believes that the defendant is innocent or "received a raw deal." *Id.* The legal grounds for which a trial court must grant a new trial are listed in Texas Rules of Appellate Procedure Rule 21.3, but that list is illustrative, not exclusive. *Id.* (citing TEX. R. APP. P. 21.3).

While a trial court has wide discretion in ruling on a motion for new trial which sets out a valid legal claim, it should exercise that discretion by balancing a defendant's claims against both the interests of the public in finality and the harmless-error standards set out in Rule 44.2. *See id.* (citing TEX. R. APP. P. 44.2). Trial courts should not grant a new

trial if the defendant's substantial rights were not affected. *Id.*

## C. Analysis

Appellant raised the same arguments in his motion for new trial as he did in his motion for mistrial. Appellant's wife testified at the hearing on his motion for new trial. She stated that a docket sheet indicating that appellant was charged with aggravated sexual assault of a child, remained posted on the courtroom door throughout trial. Additionally, appellant introduced the testimony from two venire members pertaining to the comment from the trial court referencing the dismissed sexual assault allegation and the docket sheet posted on the courtroom door.

We first note that although the trial court recognized and instructed the jury on the erroneous docket sheet, appellant never objected to its posting. While a party need not have preserved, during trial, the error complained about in a post-trial motion for new trial, if the trial court denies a motion for new trial, the defendant must have preserved the same error in order to receive consideration in the appellate court. *Herndon*, 215 S.W.3d at 901. Consequentially, we will not consider the posted docket sheet as grounds to reverse the trial court.

That leaves us to consider the testimony of the venire members. Both claimed that the allegation of aggravated sexual assault conjured a gruesome image, but the first venire member stated he would have been able to render verdict solely on the evidence adduced at trial. The second venire member was related to appellant, and the trial court accepted this potential bias as a reason to exclude him from service. Neither venire member served on the jury, and therefore were unable to testify about jury prejudice.

13

The record does not support the conclusion that the jury was prejudiced against appellant, or that appellant's substantive rights were harmed by the reference to the dismissed sexual assault count.  *See id.* at 907.   We conclude that the trial court did not abuse its discretion in denying appellant's motion for a new trial.   Appellant's second issue is overruled.

## IV.   CONCLUSION

We affirm the judgment of the trial court.


GREGORY T. PERKES
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
17th day of September, 2015.