

# Fourth Court of Appeals

## San Antonio, Texas

## OPINION

No. 04-17-00093-CR

Bobby **BORDELON**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 25th Judicial District Court, Guadalupe County, Texas
Trial Court No. 16-2517-CV
Honorable William Old, Judge Presiding

Opinion by:     Patricia O. Alvarez, Justice

Sitting:     Patricia O. Alvarez, Justice
        Luz Elena D. Chapa, Justice
        Irene Rios, Justice

Delivered and Filed:  July 31, 2018

AFFIRMED

Appellant Bobby Bordelon was indicted in Guadalupe County, Texas, Cause No. 14-0467-CR-C, styled *The State of Texas v. Bobby Bordelon*, alleging one count of continuous sexual assault of a child.  The case was called for trial on November 2, 2015.  On November 5, 2015, after the State concluded its presentation of its case-in-chief, but before the defense began the presentation of its case, the trial court, sua sponte, declared a mistrial.  Bordelon was subsequently reindicted in Cause No. 15-2215-CR-C; the new indictment alleged one count of continuous sexual assault of a child and also contained one count of aggravated sexual assault of a child and three

counts of aggravated assault with a deadly weapon. Bordelon filed a pretrial writ of habeas corpus contending double jeopardy barred retrial of the allegations contained in Cause No. 14-0467-CR-C, namely the count alleging continuous sexual assault of a child. On February 6, 2017, the trial court denied Bordelon's application. We affirm the trial court's order denying relief.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.    November 2015 Trial

Bordelon was indicted by a Bexar County jury, on May 6, 2014, on one count of continuous sexual abuse of a child. His case was called for trial the week of November 5, 2015. Defense counsel argued, during voir dire, opening argument, and during the cross-examination of witnesses, the allegations of the child victim were fabricated and that they were the result of marital issues. Defense counsel told the jury there was a second child involved, M., who had also been interviewed by the Child Advocacy Center. Defense counsel told the jury that they would hear from M., that M. made no outcry, and that they would hear nothing happened.

After the State rested its case-in-chief, defense counsel met with M. and her mother, and then defense counsel met with M. by herself. Based on her conversation with M., defense counsel believed she was under a statutory obligation to report M. as the child-victim of sexual abuse. *See* TEX. FAM. CODE ANN. § 261.101(a) (West Supp. 2018) (requiring specified professionals, having cause to believe that a child's "physical or mental health or welfare has been adversely affected by abuse or neglect" to immediately report the abuse). Defense counsel further averred, that without disclosing anything revealed to her, she met with her client and inquired from the prosecutor whether the State was willing to extend any offers to keep M. from having to testify. Finally, defense counsel notified the trial court that she

> believed that there was a situation that had come about that essentially made it
> impossible for me to continue representing Mr. Bordelon because I thought that

there was—that there was such a conflict that there was just no way that I could continue.

Defense counsel was adamant she never revealed the specifics of her conversation with M. to the court or the prosecutor. In accordance with the requirements set forth in article 38.072, defense counsel reiterated that her mandatory duty to report was to law enforcement or to the Department, not to the trial court. *See* TEX. CODE CRIM. PROC. ANN. art. 38.072 (West Supp. 2018) (setting forth outcry requirements). Defense counsel opined that, as an outcry witness under article 38.072, she could inevitably be obligated to testify against her client. *See id.*

The trial court held an ex parte hearing. Defense counsel testified the following individuals were present: trial court, court reporter, bailiffs, defense counsel, and Bordelon. No one from the district attorney's office was present and the court room was closed. At the end of the hearing, the trial court held, "I'm going to allow [defense counsel] to withdraw in this case and declare a mistrial." The parties agree Bordelon did not agree to the mistrial.

Bordelon was indicted under a new indictment alleging the following: continuous sexual abuse of a child charge (same allegations contained in the original indictment)—Count I; aggravated sexual assault of a child—Count II; and three counts of aggravated assault—Counts III–V. Bordelon filed a writ of habeas corpus on Count I, the continuous sexual abuse of a child charge, in the new indictment.

**B.    January 2017 Habeas Proceeding**

Over objection, Bordelon's defense counsel was called to testify. She testified that she neither asked the trial court to withdraw nor sought a mistrial. However, defense counsel explained, "there was just absolutely no way that I could have ethically continued on as counsel for Mr. Bordelon at that point. It would have done him great harm and there's just no way I could

proceed." In her opinion, there was no question that it was in her client's best interest for the trial court to declare a mistrial, "I believed that then and I believe that now."

On redirect, trial counsel explained that "given what we had already told the jury that they were going to hear from us in opening and throughout the trial, my biggest concern was that if they didn't hear what we had told them that they were going to hear or they heard something different from her, that was going to just be catastrophic for [Bordelon]." She opined the possibility existed that she could be called as an extraneous witness in the current trial. "There was just no way that that was going be a good outcome no matter what and there was no way that I could continue on in that trial."

Habeas counsel argued defense counsel made the trial court aware of information it should have never been told. Because the trial court was in possession of wrongfully-obtained information, the trial court granted a mistrial and made defense counsel withdraw, which left Bordelon without counsel. There were other options the trial court should have taken. Bordelon did not consent to the mistrial and the trial court should not have granted it.

The State argued the trial court acted rationally and responsibly and there was simply no way to fix the conflict. Defense counsel was an outcry witness. The trial court granted the mistrial for the right reasons and the right time.

### MANIFEST NECESSITY

**A.  Standard of Review**

An appellate court reviews a trial court's decision to grant or deny an application for writ of habeas corpus under an abuse-of-discretion standard. *Pierson v. State*, 426 S.W.3d 763, 770 (Tex. Crim. App. 2014). When raising a double-jeopardy claim on a pretrial writ of habeas corpus, the defendant must prove, by the preponderance of the evidence, that he is being tried for the same offense after declaration of a mistrial to which he objected. *Ex parte Peterson*, 117 S.W.3d 804,

818 (Tex. Crim. App. 2003), *overruled in part on other grounds*, *Ex parte Lewis*, 219 S.W.3d 335, 371 (Tex. Crim. App. 2007). A heavy burden then shifts to the State to demonstrate the mistrial was the result of "manifest necessity." *Pierson*, 426 S.W.3d at 770; *Ex parte Garza*, 337 S.W.3d 903, 909 (Tex. Crim. App. 2011). Application of legal standards are reviewed de novo, while the trial court's determinations of findings of fact, implied findings of fact, or mixed questions of fact and law are afforded almost total deference—especially when that decision turns on an evaluation of credibility and demeanor. *Peterson*, 117 S.W.3d at 819. An appellate court further views all evidence in the light most favorable to the trial court's ruling. *Id.*

## B. Arguments of the Parties

Bordelon contends the trial court failed to consider lesser alternatives to granting a mistrial, such as granting a continuance of the trial to allow for another attorney to be brought in to represent Bordelon for the remainder of the trial, decide whether to call M. in its case-in-chief, or to forgo any testimony relating to M. and proceed with closing argument for Bordelon in place of his prior attorney. Specifically, Bordelon asserts the trial court could have appointed the attorney who assisted trial counsel during voir dire to represent Bordelon during the remainder of the trial.

Bordelon also contends the trial court's actions left him unrepresented at the hearing which resulted in a mistrial, and therefore left him with no one to advocate for lesser alternatives, such as a continuance.

## C. Double Jeopardy Concerns Resulting from Prosecution Ending Prematurely Due to Mistrials

Texas and Federal Constitutional law is clear that, "[g]enerally, a criminal defendant may not be put in jeopardy by the State twice for the same offense." *Pierson*, 426 S.W.3d at 769. Due Process Clause confers "a 'valued right to have his trial completed by a particular tribunal[,]' which right 'must in some circumstances be subordinated to the public's interest in fair trials designed to

end in just judgments.'" *Ex parte Garza*, 337 S.W.3d at 909 (quoting *Wade v. Hunter*, 336 U.S. 684, 689 (1949)). Thus, as a general rule, double jeopardy bars future prosecution when a case is terminated prematurely, against the wishes of the defendant. *Id*. However, because there are a "variety of circumstances that may make it necessary to discharge a jury before a trial is concluded, and because those circumstances do not invariably create unfairness to the accused," *Arizona v. Washington*, 434 U.S. 497, 505 (1978), two exceptions apply to the general double jeopardy bar for a prosecution that ends prematurely due to a mistrial: "(1) if the criminal defendant consents to retrial or (2) there was a manifest necessity to grant a mistrial." *Pierson*, 426 S.W.3d 769–70 (citing *Ex parte Garza*, 337 S.W.3d at 909).

Prior to declaring the mistrial, the trial court must "first [consider] the availability of less drastic alternatives and reasonably [rule] them out[,]" and failure to do so is an abuse of discretion. *Id*. (quoting *Ex parte Garza*, 337 S.W.3d at 909). The trial court need not expressly articulate any reasons for the mistrial, so long as manifest necessity is apparent from the record. *Id*. In deciding whether manifest necessity existed, appellate courts must balance competing interests: the defendant's right to have his trial completed "by a particular tribunal" and the prosecutor's entitlement to "one full and fair opportunity to present his evidence to an impartial jury." *Washington*, 434 U.S. at 505; *accord Ledesma*, 993 S.W.2d at 364. We remain mindful of our mandate not to substitute our opinion for that of the trial court's and to afford "great deference" to the trial court's decision. *See Pierson*, 426 S.W.3d at 770 ("While we may not have reached the same decision, we cannot say that the trial court acted irresponsibly or irrationally."); *Ledesma*, 993 S.W.3d at 365 ("[I]f the record shows that the trial judge exercised sound discretion in finding a manifest necessity for a retrial, the judge's sua sponte declaration of a mistrial is not incorrect just because the reviewing court might have ruled differently.").

**D.      Analysis**

Bordelon bore the initial burden to raise a double jeopardy violation by proving he was facing trial for the same offense after a mistrial. *See Hill*, 90 S.W.3d at 313. Having met that burden, the burden then shifted to the State to prove the mistrial was granted in the face of manifest necessity. *Id*. ("Manifest necessity exists when the circumstances render it impossible to arrive at a fair verdict, when it is impossible to continue with trial, or when the verdict would be automatically reversed on appeal because of trial error.")

A trial judge's ability to declare a mistrial based on manifest necessity is limited to "very extraordinary and striking circumstances." *Hill v. State*, 90 S.W.3d 308, 313 (Tex. Crim. App. 2002) (citing *United States v. Jorn*, 400 U.S. 470, 480 (1971)). "Manifest necessity exists when the circumstances render it impossible to arrive at a fair verdict, when it is impossible to continue with trial, or when the verdict would be automatically reversed on appeal because of trial error." *Id*.; *see also Torres v. State*, 614 S.W.2d 436, 442 (Tex. Crim. App. [Panel Op.] 1981) ("The power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes.").

Bordelon also argues the trial court could have granted a continuance and appointed new counsel. *See Ex parte Jimenez*, 364 S.W.3d 866, 887 n.70 (Tex. Crim. App. 2012) (citing *Cooper v. State*, 509 S.W.2d 565, 567 (Tex. Crim. App. 1974) ("A trial judge may grant a continuance when a fair trial becomes impossible due to an unexpected occurrence during trial.")). The record supports the trial court's conclusion that a continuance would have prejudiced the jury, rather than allowed time for new counsel to prepare for trial. The entire defensive strategy relied on M's testimony. Bordelon's current defense counsel could not present the witness as promised, nor could any other defense counsel. Additionally, the trial court would have had to explain an extensive delay in allowing a new attorney time to prepare. As defense counsel explained, she

was Bordelon's third attorney. Any child sexual assault case is complicated. For a new attorney to enter a case after the State has rested its case-in-chief, would not only cause hardship on the attorney, but would be incredibly difficult and problematic to explain to the jury. Bordelon thus failed to show how the requested continuance would serve to his benefit. *See Jimenez*, 364 S.W.3d at 887 n.70.

An appellate court is required to afford great deference to the trial court's evaluation of potential juror bias. *Pierson*, 426 S.W.3d at 772 (citing *Ross v. Petro*, 515 F.3d 653, 661 (6th Cir. 2008)). The trial court watched the jury, the trial court saw the jury during voir dire, during the opening argument of the State and defense counsel, during the State's direct and when defense counsel cross-examined each witness. Our deference is based on the trial court's unique position to see the "reaction of the jurors;" it is "far more 'conversant with the factors relevant to the determination' than any reviewing court can possibly be." *See Ross*, 515 F.3d at 661.

Here, the trial court was present throughout the entire proceedings and had the obvious opportunity to observe the juror's demeanor. Once defense counsel raised an issue, the trial court heard from defense counsel in chambers. Defense counsel testified that she did not feel comfortable continuing on in her capacity representing Bordelon, she could potentially be called as an outcry witness in the present case or another case involving her client, and, given these constraints, no good outcome would come from her representation of Bordelon.

The trial court's actions clearly demonstrate deliberate consideration. The trial court not only talked to defense counsel in chambers, but held an ex parte hearing to ensure a record was made. Defense counsel clarified her reasons supporting a conflict representing Bordelon and why the conflict prevented her from continuing her representation. The trial court was faced with the choice of continuing a trial, without defense counsel and without the testimony which defense counsel not only promised the jury they would hear, but on which defense counsel based

Bordelon's entire defense, or declaring a mistrial. The trial court alone was in the best position to determine whether the jury would be biased by the removal of defense counsel, by any delays in providing new counsel, or by the lack of the expected testimony. Nothing in the record suggests the trial court acted irrationally, irresponsibly, precipitously, or absent sound discretion. *See Washington*, 434 U.S. at 515; *Pierson*, 426 S.W.3d at 770.

Affording the trial court due deference, we cannot conclude on this record that the trial court acted unreasonably in declaring a mistrial or that it did not explore and meaningfully consider the possibility of less drastic alternatives and reasonably rule them out before declaring the mistrial. *See Ledesma*, 993 S.W.2d at 365 (reviewing the trial court's finding of manifest necessity for mistrial by applying an abuse of discretion standard). We, therefore, cannot conclude the trial court abused its discretion in determining that manifest necessity barred application of double jeopardy to the facts of this case. *See id.*

Accordingly, we affirm the trial court's order denying Bordelon's pretrial writ of habeas corpus.

Patricia O. Alvarez, Justice

PUBLISH