

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-12-00407-CR

CHARLES SAMUEL BURGESS II                                             APPELLANT

V.

THE STATE OF TEXAS                                                              STATE

----------

### FROM THE 396TH DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

## I. INTRODUCTION

A jury convicted Appellant Charles Samuel Burgess II of one count of continuous sexual abuse of young children and one count of indecency with a child. *See* Tex. Penal Code Ann. § 21.02 (West Supp. 2013), § 21.11 (West 2011). The jury assessed his punishment at 99 years' confinement for the

---

[1]*See* Tex. R. App. P. 47.4.

continuous sexual abuse conviction and 20 years' confinement for the indecency with a child conviction. The trial court sentenced him accordingly, ordering the sentences to run concurrently. In six issues, Burgess appeals his convictions. We will affirm.

## II. FACTUAL BACKGROUND

At the time of the events at issue here, Burgess was married to Shirley. They had recently moved from Ohio to Arlington, Texas. Their adult daughter Sarah lived with her husband and four children in Frisco.[2] Burgess and Shirley proposed that each of Sarah's children celebrate his or her birthday by spending time with "Popo" (Burgess) and "Gaga" (Shirley) at their house in Arlington.

### A. Amber and Burgess

Sarah's oldest child is Amber. For Amber's eleventh birthday, she stayed at her grandparents' house for a few nights. She spent most of the trip with Shirley, doing "girly stuff." There were times, however, when Shirley had to work, and Amber was left alone with Burgess. One day while Burgess was looking after Amber, he joined her in an upstairs entertainment room. Amber was sitting down, watching television. Burgess began to massage her back. He started near her neck and progressively moved his hands down her spine. At some point, he reached his hand inside of her clothing and touched her female sex

---

[2]To protect the anonymity of the children in this case, we will use aliases to refer to some of the individuals named herein. *See Daggett v. State*, 187 S.W.3d 444, 446 n.3 (Tex. Crim. App. 2005); *McClendon v. State*, 643 S.W.2d 936, 936 n.1 (Tex. Crim. App. [Panel Op.] 1982).

2

organ.  He then removed her clothing and continued to touch her sex organ for approximately thirty minutes until he fell asleep.  Amber then escaped to a guest bedroom, where she locked the door, put her clothes back on, and waited for Shirley to return home.  Amber did not tell Shirley what happened.

A year later, Amber returned to her grandparents' house to celebrate her twelfth birthday.  On the first two days of her visit, while Shirley was at work, Burgess once again removed Amber's clothing and used his hand to touch her sex organ.  On the second day of her visit, Burgess also kissed her on the mouth.

On another occasion, Burgess was at Sarah's home in Frisco babysitting all four of the children.  Everyone was watching a movie together.  Burgess sat with Amber on the couch behind the other three children.  While the movie was playing, Burgess led Amber's hand inside of his clothing and had her grasp his penis.  The touching lasted for the duration of the movie.

## B.  Kelsey and Burgess

Sarah's second oldest child is Kelsey.  Kelsey took a birthday trip to her grandparents' house to celebrate her ninth birthday.  During the visit, Shirley took her horseback riding.  Once while Burgess was alone with Kelsey, he removed her clothing and touched her chest area.  He also touched and penetrated her sex organ with his fingers.  Kelsey and Burgess played a game of "strip Connect 4" during the visit.  According to Kelsey, the game required the loser of each round to remove an article of clothing.

3

### C. Amber's and Kelsey's Outcry

Amber and Kelsey first spoke of their encounters with Burgess by telling their friend, Heather. The girls made Heather promise not tell anyone, but Heather eventually told her mother, who then told Sarah. Sarah spoke to Amber and Kelsey individually, and each girl confirmed that the information Sarah had received was accurate. Sarah took the girls to the Children's Advocacy Center of Denton, where they gave detailed accounts to a child forensic interviewer and a sexual assault nurse.

### III. SUFFICIENCY OF THE EVIDENCE

In his first issue, Burgess contends that Amber and Kelsey were not credible witnesses and that, without their testimonies, the evidence is insufficient to sustain his convictions.

The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Winfrey v. State*, 393 S.W.3d 763, 768 (Tex. Crim. App. 2013). Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010); *see also Banda v. State*, 890 S.W.2d 42, 50 (Tex Crim. App. 1994), *cert. denied*, 515 U.S. 1105 (1995) ("The jury is the exclusive judge of the credibility of witnesses and of the weight to be given their testimony."); *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim.

4

App. 1986) ("The jury . . . could choose to believe or not believe the witnesses, or any portion of their testimony."), *cert. denied*, 488 U.S. 872 (1988).

As proof that the girls fabricated their testimonies, Burgess points to portions of the record that demonstrate that the girls' behavior—both their general demeanor and their relationship with him—did not materially change after their birthday visits.  Specifically, he notes the following: (1) Kelsey testified that Amber did not act differently when she returned home from her first birthday trip, (2) Sarah testified that she did not notice any change in the girls' behavior that alarmed her, (3) Sarah testified that the girls' relationship with Burgess did not change after their birthday trips and that Amber went for her second birthday trip without complaint, and (4) the girls' aunt testified that she attended a family gathering after the birthday visits and that both girls were affectionate toward Burgess.  Burgess argues that this evidence is inconsistent with allegations that he maintained a sexual relationship with the girls.  But the jury heard this evidence, and it heard Amber and Kelsey's testimonies describing the sexual encounters.  After hearing and weighing all the evidence, the jury apparently resolved any inconsistencies in favor of the State.  *See Banda*, 890 S.W.2d at 50; *Sharp*, 707 S.W.2d at 614.  And because Amber and Kelsey were under seventeen years of age at the time of the sexual assaults, their testimonies, even without corroboration, are sufficient to support Burgess's convictions.  *See* Tex. Code Crim. Proc. Ann. art. 38.07 (West Supp. 2013); *Sennett v. State*, 406 S.W.3d 661, 666 (Tex. App.—Eastland 2013, no pet.).  Because this court must

5

defer to the jury on matters of the weight and credibility of evidence, we overrule Burgess's first issue. *See* Tex. Code Crim. Proc. Ann. art. 38.04; *Winfrey*, 393 S.W.3d at 768.

## IV. LESSER-INCLUDED-OFFENSE INSTRUCTION

In his second issue, Burgess argues that the trial court erred by denying his request for a lesser-included-offense instruction on assault by contact.

We use a two-step analysis to determine whether an appellant was entitled to a lesser-included-offense instruction. *Hall v. State*, 225 S.W.3d 524, 528 (Tex. Crim. App. 2007); *Rousseau v. State*, 855 S.W.2d 666, 672–73 (Tex. Crim. App.), *cert. denied*, 510 U.S. 919 (1993). First, the lesser offense must come within article 37.09 of the code of criminal procedure. Tex. Code Crim. Proc. Ann. art. 37.09 (West 2006); *Moore v. State*, 969 S.W.2d 4, 8 (Tex. Crim. App. 1998). Second, some evidence must exist in the record that would permit a jury to rationally find that if the appellant is guilty, he is guilty only of the lesser offense. *Hall*, 225 S.W.3d at 536; *Salinas v. State*, 163 S.W.3d 734, 741 (Tex. Crim. App. 2005); *Rousseau*, 855 S.W.2d at 672–73.

Here, Burgess was charged with one count of continuous sexual assault of young children, one count of aggravated sexual assault, and three counts of indecency with a child. At trial, Burgess denied touching the girls' sex organs and Kelsey's chest, but he said that he may have touched the girls on their hips. Based on this testimony, Burgess argues he was entitled to a jury instruction on the lesser offense of assault by contact because there was some evidence that a

6

jury could find him guilty of that lesser offense. But before we engage in the second step of our analysis, as Burgess requests, we must determine whether assault by contact comes within article 37.09 of the code of criminal procedure. *See* Tex. Code Crim. Proc. Ann. art. 37.09; *Moore*, 969 S.W.2d at 8.

Under article 37.09(1)—the applicable subsection here—an offense is a lesser-included offense of another offense if the indictment for the greater-inclusive offense either: (1) alleges all of the elements of the lesser-included offense or (2) alleges elements plus facts (including descriptive averments, such as non-statutory manner and means, that are alleged for purposes of providing notice) from which all of the elements of the lesser-included offense may be deduced. *Ex parte Watson*, 306 S.W.3d 259, 273 (Tex. Crim. App. 2009) (op. on reh'g). Both statutory elements and any descriptive averments alleged in the indictment for the greater-inclusive offense should be compared to the statutory elements of the lesser offense. *Id.* If a descriptive averment in the indictment for the greater offense is identical to an element of the lesser offense, or if an element of the lesser offense may be deduced from a descriptive averment in the indictment for the greater-inclusive offense, this should be factored into the lesser-included-offense analysis in asking whether all of the elements of the lesser offense are contained within the allegations of the greater offense. *Id.*

Burgess urges us to consider his testimony about touching the girls' hips in deciding whether he was entitled to a lesser-included instruction. But in the first step of our analysis, we do not look to the facts presented at trial; rather, we look

7

to the evidence legally required to prove the elements of the charged offenses. *See* Tex. Code Crim. Proc. Ann. art. 37.09(1); *State v. Meru*, No. PD-1635-12, 2013 WL 6182420, at \*3 (Tex. Crim. App. Nov. 27, 2013) ("The first step of the analysis is a question of law that does not depend on the evidence presented at trial."); *McKithan v. State*, 324 S.W.3d 582, 593 (Tex. Crim. App. 2010) ("The relevant inquiry is not what the evidence may show but what the State is required to prove to establish the charged offense.").

Assault by contact, which Burgess contends is a lesser-included offense here, requires that the defendant knew or reasonably believed that the complainant would regard the contact as offensive or provocative. Tex. Penal Code Ann. § 22.01(a)(3) (West Supp. 2013). None of the charged offenses, as alleged, requires such proof. In other words, proof that Burgess knew the girls would be offended by his touching, or would find the touching provocative, is not required to prove continuous sexual assault of young children, aggravated sexual assault, or indecency with a child. *See id.* §§ 21.02, 21.11, § 22.021 (West 2011 & Supp. 2013). Because this additional fact must be proved for assault by contact but not for the charged offenses, assault by contact is not a lesser-included offense under article 37.09(1).[3] *See* Tex. Code Crim. Proc. Ann. art.

---

[3]And because the first part of the lesser-included-offense instruction analysis is not satisfied, we do not need to reach the second part of the analysis—whether some evidence exists in the record that if Burgess is guilty, he is guilty only of the lesser offense. *See Hall*, 225 S.W.3d at 528; *Rousseau*, 855 S.W.2d at 672–73.

37.09(1); *McKithan*, 324 S.W.3d at 583; *Watson*, 306 S.W.3d at 273; *see also Lopez v. State*, No. 13-09-00523-CR, 2012 WL 256103, at *7 (Tex. App.—Corpus Christi Jan. 26, 2012, no pet.) (mem. op., not designated for publication) (holding that assault by contact is not a lesser-included offense of aggravated sexual assault); *Silber v. State*, No. 13-05-00238-CR, 2006 WL 347167, at *2–3 (Tex. App.—Corpus Christi Feb. 16, 2006, pet. ref'd) (mem. op., not designated for publication) (holding that assault by contact is not a lesser-included offense of indecency with a child); *Shea v. State*, 167 S.W.3d 98, 106 (Tex. App.—Waco 2005, pet. ref'd) (holding that assault by contact is not a lesser-included offense of indecency with a child); *Ramos v. State*, 981 S.W.2d 700, 701 (Tex. App.—Houston [1st Dist.] 1998, pet. ref'd) (holding that assault by contact is not a lesser-included offense of aggravated sexual assault or indecency with a child).

Because assault by contact is not a lesser-included offense in this case, the trial court did not err by refusing Burgess's request for a jury instruction. *See* Tex. Code Crim. Proc. Ann. art. 37.09; *Watson*, 306 S.W.3d at 273. We overrule Burgess's second issue.

## V. TESTIMONY OF RECENT ALLEGATION

In his third issue, Burgess complains that the trial court abused its discretion by admitting evidence of the extraneous act of his playing "strip Connect 4" with Kelsey. He contends that because the State failed to provide him with adequate notice of its intent to introduce the extraneous act, the trial court should have excluded the evidence.

9

Article 38.37, section 3 of the code of criminal procedure provides that a defendant who requests notice of the State's intent to introduce extraneous acts during the State's case-in-chief is entitled to notice "in the same manner as the state is required to give notice under Rule 404(b)." Act of May 24, 2005, 79th Leg., R.S., ch. 728, § 4.004, 2005 Tex. Gen. Laws 2188, 2192 (amended 2013) (current version at Tex. Code Crim. Proc. Ann. art. 38.37, § 3 (West Supp. 2013)). Rule 404(b) requires that the State "give reasonable notice in advance of trial." Tex. R. Evid. 404(b). "The purpose behind the notice provision is to adequately make known to the defendant the extraneous [acts] the State intends to introduce at trial and to prevent surprise to the defendant." *Martin v. State*, 176 S.W.3d 887, 900 (Tex. App.—Fort Worth 2005, no pet.). We review a trial court's ruling as to the admissibility of extraneous acts under an abuse-of-discretion standard. *See Mitchell v. State*, 931 S.W.2d 950, 953 (Tex. Crim. App. 1996).

Here, Burgess objected to Kelsey's testimony that she played strip Connect 4 with Burgess, arguing that the State did not provide him with timely notice under article 38.37,[4] but he did not request a continuance. By not requesting a continuance, Burgess did not preserve the issue he urges on appeal on the basis of surprise. *See Martines v. State*, 371 S.W.3d 232, 249 (Tex. App.—Houston [1st Dist.] 2011, no pet.); *Martin*, 176 S.W.3d at 900; *Koffel v.*

[4]Kelsey did not inform the State about the game until the day before trial began.

10

*State*, 710 S.W.2d 796, 802 (Tex. App.—Fort Worth 1986, pet. ref'd) (citing

*Lindley v. State*, 635 S.W.2d 541, 544 (Tex. Crim. App. [Panel Op.] 1982)).

Even assuming, without deciding, both that Burgess preserved error and that the trial court abused its discretion by overruling his objection regarding the timeliness of the notice, the record does not demonstrate that Burgess suffered harm. The erroneous admission of an extraneous act is a nonconstitutional error, meaning that the error is reversible only if the appellant's substantial rights were affected by not receiving timely notice. *See* Tex. R. App. P. 44.2(b); *McDonald v. State*, 179 S.W.3d 571, 578 (Tex. Crim. App. 2005). The record does not suggest that Burgess's trial strategy would have changed if he had received advanced notice that the State intended to introduce evidence of the Connect 4 game. When prosecutors met with Kelsey in the week before trial, she could not remember Burgess touching her sex organ or chest area. The State provided Burgess with advanced notice of the information prosecutors obtained during the meeting with Kelsey. On cross-examination of Kelsey, Burgess drew attention to the discrepancy, asking her why she could not recall the touching in her meeting with prosecutors but could remember it at trial. Similarly, when questioning Kelsey about the Connect 4 game, Burgess drew attention to the discrepancy. He asked her about testifying at trial to the details of a game that she never mentioned to anyone until the day before trial. Burgess does not explain on appeal how his defense strategy would have differed had he received notice of the Connect 4 evidence. Without any explanation from

11

Burgess, we cannot determine that his trial strategy was adversely affected, much less substantially and injuriously affected, by a lack of notice, especially in light of his cross-examination of Kelsey on the issue. *See McDonald*, 179 S.W.3d at 578–79; *Martines*, 371 S.W.3d at 249–50.

We overrule Burgess's third issue.

### VI. OUTCRY TESTIMONY

In his fourth issue, Burgess complains that the trial court abused its discretion by permitting the State to designate Rebecca Truette, the family services coordinator who interviewed Amber and Kelsey at the Children's Advocacy Center, as its outcry witness. Burgess contends that Sarah was the proper outcry witness because she was the first person over eighteen years of age to whom the girls told about Burgess's misconduct.

In pertinent part, article 38.072 of the code of criminal procedure allows for hearsay testimony to be admitted as substantive evidence in the prosecution of sexual offenses committed against children under the age of fourteen, provided that the witness was the first person, other than the defendant and who was age eighteen or older, to whom the children made a statement about the offense. Tex. Code Crim. Proc. Ann. art. 38.072, §§ 1(1), 2 (West Supp. 2013); *Duran v. State*, 163 S.W.3d 253, 257 (Tex. App.—Fort Worth 2005, no pet.). The term "statement about the offense" means "more than words which give a general allusion" of sexual abuse; rather, it means "a statement that in some discernible manner describes the alleged offense." *Garcia v. State*, 792 S.W.2d 88, 91 (Tex.

12

Crim. App. 1990). A trial court has broad discretion in determining the proper outcry witness, and we will not reverse the trial court absent an abuse of that discretion. *Id.* at 92.

At trial, Sarah testified that before she took the girls to the Advocacy Center, she asked them, individually, if "anything bad" was happening to them. Amber said that Burgess "had been touching her private areas and that he made her touch his as well." Kelsey simply said that Burgess had been touching her. Sarah testified that each of these conversations lasted two or three minutes. Sarah did not press the girls for details, nor did the girls provide her with any details.[5] Sarah then took the girls to the Advocacy Center, where each girl gave a detailed account to Truette.

Because article 38.072 demands more than a general allusion of sexual abuse, we conclude that the trial court did not abuse its discretion by determining that Truette, not Sarah, was the proper person to testify as an outcry witness. *See* Tex. Code Crim. Proc. Ann. art. 38.072; *Garcia*, 792 S.W.2d at 91–92. Truette was the first person over eighteen years of age to whom the girls provided a detailed account of their encounters with Burgess. *See Smith v. State*, 131 S.W.3d 928, 930–31 (Tex. App.—Eastland 2004, pet. ref'd) (holding that trial court did not abuse its discretion by ruling that counselor at child

---

[5]When asked why she did not press the girls for details, Sarah responded: "I didn't want to know the details really, first of all. And I just wanted to ask each of them separately to make sure that what they were saying, you know, was the truth. And I don't know, I didn't want to know what they said."

advocacy center was proper outcry witness when child first told mother and doctor that child had been performing oral sex on appellant but did not give any other details); *Sims v. State*, 12 S.W.3d 499, 500 (Tex. App.—Dallas 1999, pet. ref'd) (holding that trial court did not abuse its discretion by ruling that mother was not proper outcry witness when child first told mother that appellant had been touching child's "private parts" but did not give any other details); *Schuster v. State*, 852 S.W.2d 766, 768 (Tex. App.—Fort Worth 1993, pet. ref'd) (holding that trial court did not abuse its discretion by ruling that mother was not proper outcry witness when child first told mother that appellant had touched her but did not provide any other details).  We overrule Burgess's fourth issue.

## VII. VOIR DIRE REMARKS

In his fifth issue, Burgess argues that the trial court erred by not granting a mistrial sua sponte during voir dire based on remarks from the State.

During voir dire, a prospective juror asked the prosecutor why he chose to specialize in crimes against children.  The prosecutor responded:

> Well, when you deal with drug dealers, you deal with robbers, people like that.  There are always circumstances where maybe they've had a—grew up in a poor neighborhood, maybe they had a bad family life.  Unfortunately, some of the murder cases I've tried are, you know, a husband is cheating on his wife and his wife, you know, kills him.
>
> I mean, I'm not saying it's okay.  But I'm just saying a lot of people we deal with aren't the savoriest of characters.  And in my mind there's just—there's nothing worse than hurting a child.  So that's why I do these cases, because I think they're the worst criminals.

14

Burgess did not object to these remarks and, consequently, did not preserve his complaint for review. *See* Tex. R. App. P. 33.1(a)(1) (requiring a timely request, objection, or motion stating the specific grounds for the desired ruling to preserve a complaint for review); *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012); *see also Espinosa v. State*, 194 S.W.3d 703, 708 (Tex. App.—Houston [14th Dist.] 2006, no pet.) ("When appellant complains about an improper remark by the prosecutor during voir dire, appellant must object when the remark is made.").

Without an objection at trial, Burgess argues that the trial court should have granted a mistrial sua sponte because the prosecutor's remarks were so inflammatory that they deprived him of his constitutional right to a fair trial. But a trial court has the power to declare a mistrial sua sponte only when manifest necessity exists. *See Torres v. State*, 614 S.W.2d 436, 442–43 (Tex. Crim. App. [Panel Op.] 1981). Here, the prosecutor's general statements about those who commit crimes against children do not rise to the level of manifest necessity for a mistrial. *See Hill v. State*, 90 S.W.3d 308, 313 (Tex. Crim. App. 2002) ("Manifest necessity exists when the circumstances render it impossible to arrive at a fair verdict, when it is impossible to continue with trial, or when the verdict would be automatically reversed on appeal because of trial error."); *Torres*, 614 S.W.2d at 442 ("The power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes.") (quoting *U.S. v. Perez*, 22 U.S. 579, 580 (1824)). *See generally Brown v. State*, 907 S.W.2d 835, 839–

15

40 (Tex. Crim. App. 1995) (reviewing cases in which the court held that manifest necessity did not exist). We overrule Burgess's fifth issue.

## IIX. SUPPRESSION OF ORAL STATEMENTS

In his sixth issue, Burgess complains that the trial court erred by denying his motion to suppress evidence of his interview with police because it was obtained in violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602 (1966).

The State may not use a defendant's statements, whether exculpatory or inculpatory, stemming from a custodial interrogation unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. *Id.* at 444, 86 S. Ct. at 1612. Article 38.22 of the code of criminal procedure also precludes the use of statements that result from a custodial interrogation without compliance with its procedural safeguards. *See* Tex. Code Crim. Proc. Ann. art. 38.22 (West Supp. 2013). Before an investigation reaches the accusatorial or custodial stage, a person's Fifth Amendment rights have not come into play, and the voluntariness in waiving those rights is not implicated. *Melton v. State*, 790 S.W.2d 322, 326 (Tex. Crim. App. 1990).

There are at least four general situations where a suspect's detention may constitute custody: (1) when the suspect is physically deprived of his freedom of action in any significant way, (2) when a law enforcement officer tells the suspect that he cannot leave, (3) when law enforcement creates a situation that would lead a reasonable person to believe that his freedom of movement has been significantly restricted, and (4) when there is probable cause to arrest and law

enforcement officers do not tell the suspect that he is free to leave. *Dowthitt v. State*, 931 S.W.2d 244, 255 (Tex. Crim. App. 1996); *McCulley v. State*, 352 S.W.3d 107, 115–16 (Tex. App.—Fort Worth 2011, pet. ref'd). In the first three situations, the restriction on freedom of movement must amount to a degree associated with arrest rather than investigative detention. *Dowthitt*, 931 S.W.2d at 255; *McCulley*, 352 S.W.3d at 116.

Because a trial court's custody determination presents a mixed question of law and fact, we give almost total deference to the trial court's ruling when the questions of fact turn on an evaluation of credibility and demeanor. *Herrera v. State*, 241 S.W.3d 520, 526–27 (Tex. Crim. App. 2007); *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002). But when application-of-law-to-fact questions do not turn on the credibility and demeanor of the witnesses, we review the trial court's rulings on those questions de novo. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson*, 68 S.W.3d at 652–53. Additionally, when, as here, the record is silent on the reasons for the trial court's ruling, or when there are no explicit fact findings and neither party timely requested findings and conclusions from the trial court, we imply the necessary fact findings that would support the trial court's ruling if the evidence, viewed in the light most favorable to the trial court's ruling, supports those findings. *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008); *Herrera*, 241 S.W.3d at 527; *see Wiede v. State*, 214 S.W.3d 17, 25 (Tex. Crim. App. 2007).

We then review the trial court's legal ruling de novo unless the implied fact findings supported by the record are also dispositive of the legal ruling. *State v. Kelly*, 204 S.W.3d 808, 819 (Tex. Crim. App. 2006).

Here, Burgess complains about the admission of a recorded interview he had with Arlington police nearly a month before a warrant was issued for his arrest. Detective Donna Hubbard of the Arlington Police Department was in charge of Burgess's investigation. Early one morning, she telephoned Burgess to ask if he wanted to come to her office to discuss the allegations made against him. Burgess responded that he wanted to come in immediately. Detective Hubbard knew that her partner, Detective Debbie Stansell, would have to drive from Frisco to Arlington to attend the interview, so she scheduled the interview for early that afternoon.

Detective Hubbard worked out of the Alliance for Children office in Arlington. All guests to the Alliance office had to be "buzzed into" the building. When Burgess arrived for his interview, he was buzzed in, and Detective Hubbard met him in the building's lobby. She then showed him to the second-floor interview room. In the interview room, Detective Stansell joined Detective Hubbard and Burgess.

The detectives interviewed Burgess for approximately ninety minutes. Neither detective advised him of his *Miranda* rights. At the conclusion of the interview, he left both the room and the building without being buzzed out. Nine days after the interview at Alliance, Detective Hubbard interviewed Burgess

again at another location.  Twenty-nine days after his interview at Alliance, she obtained a warrant for his arrest.

On appeal, Burgess complains that during the interview at Alliance, he was in custody for *Miranda* purposes because (1) he had to be buzzed into the building and (2) the interview room "look[ed] like any other room where statements are taken when a person is in custody."  But these facts do not transform Burgess's interview into a custodial interrogation.  The court of criminal appeals has held that these types of voluntary stationhouse interviews are non-custodial:

> Where a person voluntarily accompanies police officers, who are then only in the process of investigating a crime, to a certain location, and he knows or should know that the police officers suspect he may have committed or may be implicated in committing the crime, we are unable to hold that under the circumstances such a person is restrained of his freedom of movement.  Under those circumstances, he is not in custody.

*Dancy v. State*, 728 S.W.2d 772, 778–79 (Tex. Crim. App.), *cert. denied*, 484 U.S. 975 (1987); *see also Oregon v. Mathiason*, 429 U.S. 492, 494–95, 97 S. Ct. 711, 713–14 (1977) (holding defendant's freedom not restricted in any way when defendant voluntarily met detective for interview at state patrol office); *Estrada v. State*, 313 S.W.3d 274, 294–95 (Tex. Crim. App. 2010) (holding defendant was not in custody when he voluntarily submitted to questioning and was in interview room at police station for five hours), *cert. denied*, 131 S. Ct. 905 (2011); *Dowthitt*, 931 S.W.2d at 255 ("Stationhouse questioning does not, in and of itself, constitute custody.").  The fact that Burgess had to be buzzed into the building

19

does not change our analysis. *See Frame v. State*, No. 02-05-00097-CR, 2006 WL 3627155, at *5–6 (Tex. App.—Fort Worth Dec. 14, 2006, pet. ref'd) (mem. op., not designated for publication) (holding that defendant was not in custody when she voluntarily went to police station for interview and was escorted to interrogation room in restricted area); *Scott v. State*, 165 S.W.3d 27, 42–43 & n.6 (Tex. App.—Austin 2005) (holding that defendant was not in custody where police questioned him in a "secure area where the interview room was located"), *rev'd on other grounds*, 227 S.W.3d 670 (Tex. Crim. App. 2007). Thus, the record supports the trial court's implied finding that Burgess was not in custody during his interview at the Alliance office. *See Dancy*, 728 S.W.2d at 778. Because he was not in custody, his Fifth Amendment rights had not yet come into play and the voluntariness of his statement is not implicated. *See Melton*, 790 S.W.2d at 326. We overrule Burgess's sixth issue.

## IX. CONCLUSION

Having overruled Burgess's six issues, we affirm the trial court's judgment.


SUE WALKER
JUSTICE

PANEL: GARDNER, WALKER, and MEIER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: January 9, 2014