

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-0710-17

### EX PARTE ELIZABETH ANN GARRELS, Appellant

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE NINTH COURT OF APPEALS
### MONTGOMERY COUNTY

**KEASLER, J., delivered the opinion for a unanimous Court.**

## O P I N I O N

A defendant has a constitutional right to have her fate determined "before the first trier of fact."[1]  A trial judge may violate this right by ordering a mistrial over her objection; but if she consented to it, double jeopardy will not prevent her re-prosecution.[2]  Today we reiterate that, although consent may be "implied" from the totality of the circumstances,[3] it

---

[1] *See, e.g.*, *Torres v. State*, 614 S.W.2d 436, 441 (Tex. Crim. App. 1981) (citing, *inter alia*, *United States v. Scott*, 437 U.S. 82, 98 (1978)).

[2] *Id.* at 441–42 (citing, *inter alia*, *United States v. Gori*, 367 U.S. 364 (1981)).

[3] *Id.* at 441.

must nevertheless be supported by record-based evidence. Because the court of appeals found otherwise, we reverse.

## I. FACTS

### A. Trial

Elizabeth Ann Garrels, appellant in this case, was charged by information with the misdemeanor offense of driving while intoxicated (DWI). Her case was brought to trial before a Montgomery County jury. The jury was duly selected and sworn, thereby placing Garrels in "jeopardy" for double-jeopardy purposes.[4] The State's first witness was Trooper Christopher Lucchese with the Texas Department of Public Safety, who performed the traffic stop and roadside investigation that eventually led to Garrels's DWI arrest.

As Lucchese began to testify about Garrels's performance on certain roadside-sobriety tests, Garrels objected that her statutory discovery rights had been violated by the State's failure to timely designate the trooper as a potential "expert" witness. Garrels explained that, under Code of Criminal Procedure Article 39.14(b), the State was obligated to disclose "the name and address of each person" who might provide evidence under Texas Rules of Evidence 702, 703, and 705 "not later than the 20th day before the date that jury selection in the trial is scheduled to begin[.]"[5] Although the State had formally designated Lucchese as a potential expert witness prior to jury selection, that designation occurred less than a

---

[4] *E.g.*, *Brown v. State*, 907 S.W.2d 835, 839 (Tex. Crim. App. 1995) (citing, *inter alia*, *Crist v. Bretz*, 437 U.S. 28, 35 (1978)).

[5] TEX. CODE CRIM. PROC. art. 39.14(b).

week before jury selection—on the Wednesday before Monday's trial. As a result of this untimely designation, Garrels asked that the witness not be allowed to testify in any expert capacity.

The State, evidently conceding "its violation of the [discovery] statute," countered that the "appropriate remedy would be a continuance of the trial and not the exclusion of testimony."[6] Garrels disagreed:

> [DEFENSE COUNSEL]: Judge, the only argument I would make is that granting a continuance would allow the state an improper way out of their own mistake . . . . They've had at least one continuance on this case on trial date. And the alternative, we would renew our original request from the Court to strike all the testimony of all expert witness[es] untimely provided by the State in this case.

Although the trial judge was not inclined to grant Garrels's request to "strike" the officer's testimony, he was also averse to the State's request for a two-week continuance so that the terms of the discovery statute might be satisfied.

Faced with two unappealing options, the judge *sua sponte* declared a mistrial: "I'm going to declare, not grant it, because no one's asked for one . . . declare a mistrial on my own with no finding of bad faith, which would basically be the same as resetting but not with the same jury." At this point, one prosecutor voiced his concern that, "without a finding of manifest necessity" on the record, the State "would be jeopardy barred" from re-trying Garrels in any future proceeding. The trial judge then asked the State to elaborate its

---

[6] *Ex parte Garrels*, No. 09-17-00038-CR, 2017 WL 1953282, at *1 (Tex. App.—Beaumont May 10, 2017) (mem. op., not designated for publication).

position.

> THE COURT: You really think that's true, even if—
>
> [PROSECUTOR]: Because the defense has not requested a mistrial. I believe that you need a manifest necessity to declare a mistrial. You are free to grant a mistrial, generally, but I believe that would bar us. If the defense wanted to request a mistrial in lieu of [excluding] the testimony, that would be different.
>
> THE COURT: Doesn't sound like that's what—
>
> [PROSECUTOR]: Correct. It's my understanding when the defense doesn't request a mistrial it needs to be due to manifest necessity.

After a brief colloquy between the trial judge and prosecutor about the law of manifest necessity, the trial judge again announced: "All right. I'm just going to grant a mistrial on my own. Y'all can deal with it and decide what to do going forward." The State expressly objected to this approach. Garrels did not.

## B. Pre-trial Writ

Several months later, the State sought to re-try Garrels for the same offense. Garrels filed a pre-trial application for a writ of habeas corpus, claiming "that the State is barred from prosecution of this case by the Double Jeopardy [C]lause of the 5th Amendment, United States Constitution, and Article I, Section 14, Texas Constitution." The trial court held a hearing on Garrels's application. The State argued that Garrels's application should be denied, either because the trial judge's mistrial order was supported by "manifest necessity," or because, by failing to object when "given an adequate opportunity to do so," Garrels had "impliedly consented to the mistrial." Garrels responded that, although she did "[n]ot

expressly" object to the mistrial, the relief she requested from the outset of her discovery-related objection was not to abort, but rather to proceed with, the trial. A mistrial, like a continuance, would have given the State a "way out of" its untimely-discovery "mistake."

At the conclusion of this hearing, the trial judge denied Garrels's application. His decision appeared primarily to be based on a finding of manifest necessity:

> THE COURT: . . . So I think I felt like because this statute was so new I was in kind of no man's land, as far as any type of authority in this case. There was nothing out there for me . . . to find that talked about this statute. So I think reading—recalling it as I do and reading what I was saying out loud, it seems like I was at the point of feeling like it was a necessity, whether you call it manifest necessity or just—I think that's why I did it because I felt that way.

But the trial judge also "note[d] that there was no objection by defense to the mistrial," which might be construed as a finding that Garrels had impliedly consented to the trial judge's mistrial order. Appeal was taken to the Ninth Court of Appeals in Beaumont.

## C. Appeal and Discretionary Review

In a succinct opinion, the Ninth Court of Appeals affirmed the trial court's ruling, resolving the case on implied-consent grounds:

> A defendant who does not object to the trial judge's *sua sponte* declaration of a mistrial, despite an adequate opportunity to do so, has impliedly consented to the mistrial. Based on this record, Garrels's counsel had an adequate opportunity to object to the mistrial, but did not do so. We conclude that Garrels consented to the mistrial. . . . Accordingly, we overrule Garrels's issue on appeal and affirm the trial court's order denying Garrels's pretrial application for writ of habeas corpus.[7]

---

[7] *Garrels*, 2017 WL 1953282, at *2 (citations omitted).

The court declined to decide whether the mistrial was supported by manifest necessity.[8]

We granted Garrels's petition for discretionary review to address the only ground she raised before this Court: "Has a defendant who did not object to a trial court's declaration of mistrial, despite an adequate opportunity to do so, impliedly consented to the mistrial?"[9]

## II. LAW

The Fifth Amendment to the United States Constitution prohibits a State from putting a defendant in jeopardy twice for the same offense.[10] So, "as a general rule," if the defendant is placed in jeopardy and "the jury is discharged without reaching a verdict, double jeopardy will bar retrial."[11] There are two notable exceptions to this rule. If the mistrial was done either (1) with the defendant's consent or (2) based on some "manifest necessity," re-trial is not jeopardy barred.[12] This opinion concerns only the first of these exceptions—how to determine whether a defendant has "consent[ed] to a mistrial" and thereby "elected to terminate the proceedings and . . . begin anew."[13]

In *United States v. Dinitz*, the Supreme Court observed that "a motion by the

---

[8] *Id.* at *2 n.1.

[9] Appellant's Petition for Discretionary Review at 2.

[10] *E.g.*, *Hill v. State*, 90 S.W.3d 308, 313 (Tex. Crim. App. 2002) (citing *Arizona v. Washington*, 434 U.S. 497, 503 (1978); *Alvarez v. State*, 864 S.W.2d 64, 65 (Tex. Crim. App. 1993)).

[11] *Brown*, 907 S.W.2d at 839.

[12] *Id.*

[13] *Harrison v. State*, 767 S.W.2d 803, 806 (Tex. Crim. App. 1989).

defendant for mistrial is ordinarily assumed to remove any barrier to reprosecution, even if the defendant's motion is necessitated by prosecutorial or judicial error."[14] Why should this be? It is not because, by requesting or consenting to the order of a mistrial, the defendant has somehow "waive[d]" her double-jeopardy rights.[15] To the contrary, "traditional waiver concepts have little relevance where the defendant must determine whether or not to request or consent to a mistrial in response to judicial or prosecutorial error."[16] Rather, it is because the Double Jeopardy Clause affords the defendant "primary control over the course to be followed" in the aftermath of prejudicial error.[17] Indeed, any consent-based double-jeopardy analysis should pay particular respect to the "prima[c]y" of the defendant's "control," for it is, by the Supreme Court's reckoning, "the important consideration" for double-jeopardy purposes.[18] In this area, as with manifest necessity, "the trial judge must . . . take care to assure himself that the situation warrants action on his part foreclosing the defendant from a potentially favorable judgment by the tribunal."[19]

---

[14] 424 U.S. 600, 607 (1976) (quoting *United States v. Jorn*, 400 U.S. 470, 485 (1971) (plurality op.)); *but see Oregon v. Kennedy*, 456 U.S. 667, 676 (1982) ("Only where the governmental conduct in question is intended to 'goad' the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion.").

[15] *Dinitz*, 424 U.S. at 608–09 (citing, *inter alia*, *Jorn*, 400 U.S. at 484–85).

[16] *Id.* at 609.

[17] *Id.* (footnote omitted).

[18] *Id.*

[19] *Cf. Jorn*, 400 U.S. at 485.

To be sure, this does not mean that the trial judge must admonish the defendant of her double-jeopardy rights and obtain a "knowing, intelligent, and voluntary" waiver before he may conclude that she has consented to the mistrial.[20]  But consent must still appear in the record as a deliberate "relinquishment" on the defendant's part—an exercise of her "primary control"—if it is to be relied upon as a reason to allow the State to re-prosecute her.[21]  The fact that the defendant faces two sub-optimal choices when a prejudicial error occurs will not invalidate her decision to consent to a mistrial.[22]  A choice between two undesirable outcomes is still a choice.  But to hold that a defendant might inadvertently forfeit her double-jeopardy rights merely by failing to object to a mistrial would be inconsistent with the notion that she retains "primary control over the course to be followed" when a mistrial is on the table.[23]

In accordance with these somewhat-loosened requirements for a double-jeopardy "relinquishment," we have said that "[c]onsent need not be expressed, but may be implied from the totality of circumstances attendant to a declaration of mistrial."[24]  In *Torres v. State*, the trial judge asked counsel if his client wanted a mistrial.[25]  But before counsel had an

---

[20]  *Dinitz*, 424 U.S. at 609 n.11 (citing *Johnson v. Zerbst*, 304 U.S. 458 (1938)).

[21]  *Id.* at 609 & n.11.

[22]  *Id.* at 608–09.

[23]  *Id.*

[24]  *Torres*, 614 S.W.2d at 441 (citations omitted).

[25]  *Id.* at 442.

opportunity to speak to his client, the trial judge simply declared, "Well, let me make it for you. We're going to call a mistrial[.]"[26] It was in this context that we said, "before a failure to object constitutes an implied consent to a mistrial, a defendant must be given an adequate opportunity to object to the court's motion."[27]

Some courts of appeals,[28] including the Ninth Court of Appeals in this case, have understood this passage to mean that "a defendant who does not object to the trial judge's *sua sponte* declaration of a mistrial, despite an adequate opportunity to do so, has impliedly consented to the mistrial."[29] But that is not what *Torres* says. Taken at its word, *Torres* describes nothing more than a necessary precondition for a finding of consent: "[B]efore" a court may determine that the defendant impliedly consented to the mistrial, the record must show that she was "given an adequate opportunity to object."[30] This language does not mean that a reviewing court may conclude its implied-consent analysis simply by observing that the defendant failed to object. After all, *Torres* directed reviewing courts to consider the

---

[26] *Id.*

[27] *Id.* at 441–42.

[28] *See, e.g.*, *Ex parte Montano*, 451 S.W.3d 874, 878 (Tex. App.—Houston [1st Dist.] 2014); *Ledesma v. State*, 993 S.W.2d 361, 365 (Tex. App.—Fort Worth 1999); *but see Allen v. State*, 656 S.W.2d 592, 594–95 (Tex. App.—Austin 1983) ("[W]e will not infer consent from a silent record.") (citations omitted).

[29] *Garrels*, 2017 WL 1953282, at *2.

[30] *Torres*, 614 S.W.2d at 441–42.

"totality of [the] circumstances."[31]  To find consent based solely on the lack of an objection would be to improperly emphasize one "circumstance" above all others.[32]

The court of appeals' reading of *Torres* is also inconsistent with how we have previously allocated the respective "burden[s]" in litigating consent-based double-jeopardy issues.[33]  In *McClendon v. State*, we laid out a burden-shifting scheme to be used in resolving these kinds of claims: The initial burden is on the defendant "to [g]o forth with evidence in support of h[er] allegation of former jeopardy."[34]  In other contexts we have clarified that, in order to satisfy this *prima facie* burden, the defendant need only establish "that [s]he was tried for the same offense after a mistrial."[35]  Once the defendant makes this initial showing, the burden shifts to the State "to prove that appellant consented to" the order terminating her first trial.[36]  For, as we said in *McClendon*, "[i]t would be unreasonable to require the appellant to prove a negative, that [s]he did Not agree to the dismissal."[37]  This is not unlike

---

[31]  *Id.* at 441.

[32]  *Cf. Ex parte Little*, 887 S.W.2d 62, 66 (Tex. Crim. App. 1994) ("Moreover, to hold that appellant waived his objection [to the mistrial] merely by failing to explicitly state 'I object,' we would adopt the hypertechnicalities which we rejected in *Lankston*.") (referencing *Lankston v. State*, 827 S.W.2d 907, 908–09 (Tex. Crim. App. 1992)).

[33]  *See, e.g.*, *McClendon v. State*, 583 S.W.2d 777, 780–81 (Tex. Crim. App. 1979) (citing *Ward v. State*, 520 S.W.2d 395, 398 (Tex. Crim. App. 1975)).

[34]  *Id.* at 780 (quotation marks omitted) (quoting *Ward*, 520 S.W.2d at 398)).

[35]  *Hill*, 90 S.W.3d at 313.

[36]  *McClendon*, 583 S.W.2d at 780–81.

[37]  *Id.* at 780.

how Fourth-Amendment claims are presently litigated: The initial burden is on the defendant to prove that she was subjected to a presumptively illegal search, and if she does so, the burden then shifts to the State to establish that she consented to it.[38]

At oral argument it was suggested that this case might be resolved by deciding whether, in view of *Marin v. State*,[39] a defendant forfeits her ability to assert her double-jeopardy rights on appeal if she does not preserve error at trial. We have hinted at this possibility before.[40] But, as both parties observed in oral argument, that is not the ideal approach to this issue. The particular trial-court error that Garrels seeks to redress in this appeal is not the trial judge's mistrial order; indeed, at trial, the parties understood that order to be un-appealable.[41] Instead, Garrels contends that the trial court erred to allow her re-prosecution to go forward following the months-earlier mistrial order. By filing a pretrial application alerting the trial court to her specific complaint in this regard, Garrels has certainly preserved her ability to complain of this alleged error on appeal. The question of

---

[38] *See generally* 43 George E. Dix & John M. Schmolesky, *Texas Practice—Criminal Practice and Procedure* § 18:27, at 392.

[39] 851 S.W.2d 275, 278–80 (Tex. Crim. App. 1993) (explaining that, if a defendant wishes to complain on appeal that the trial court violated a particular right, "usually" the defendant must object to the violation at trial).

[40] *See Little*, 887 S.W.2d at 66 n.4 (declining to decide whether, under *Marin*, "a defendant's silence in the face of a mistrial amounts to consent").

[41] *See* 1 RR at 63 (wherein the trial judge opines that, if he were to order a mistrial, "[t]here wouldn't be anything to appeal, obviously," and the State responds, "No, there wouldn't be").

consent, then, goes to the merits of Garrels's double-jeopardy claim—not its preservation or lack thereof. And "traditional waiver concepts have little relevance" when it comes to actually resolving this question on its merits.[42]

Because implied-consent findings necessarily involve the "totality of circumstances attendant to" the mistrial,[43] we are unable to lay out any specific formula or set of facts that will *per se* establish implied consent. We observe that, in this case, a break was noted in the record shortly before the trial judge declared a mistrial. Perhaps defense counsel requested a mistrial off the record, then remained silent when the trial judge began to discuss the possibility of a mistrial on the record. Or maybe, upon the trial court's declaration of a mistrial, Garrels and her lawyer performed some overtly celebratory act that is not ordinarily captured in the record—hand-shaking, "high-fiving," or joyously embracing one another. The trial court would have acted well within its discretion to construe each of these circumstances as an indication that the defendant impliedly consented to the mistrial; and a reviewing court would be required to view this evidence "in the light most favorable to the trial court's ruling."[44]

But that does not mean that facts such as these can simply be presumed on a silent

---

[42] *Dinitz*, 424 U.S. at 609.

[43] *Torres*, 614 S.W.2d at 441.

[44] *Ex parte Masonheimer*, 220 S.W.3d 494, 507 (Tex. Crim. App. 2007).

record.[45]  If they are to form the basis for a ruling that the defendant "impliedly" consented

to the mistrial, these kinds of supporting facts must appear in the record.[46]  We perceive no

impediment to the trial court, either *sua sponte* or at the State's insistence, simply asking the

defendant whether she would consent to the mistrial before it is declared.  The important

point, however, is that it is the State's burden to "introduce such evidence" into the record

if consent is to be relied upon as a reason to allow re-prosecution.[47]  It is not the defendant's

burden to show that, although she did not request the mistrial, neither did she consent to it.

## III.  ANALYSIS

In this case, there is no dispute that Garrels carried her initial burden of proving a

*prima facie* double-jeopardy violation.  Garrels's counsel filed an affidavit in support of his

pretrial application for a writ of habeas corpus.  In it, he averred that a jury was empaneled

and sworn on the initial trial and that the trial was terminated in a mistrial.  We note that the

same trial judge who ordered the mistrial also ruled on Garrels's pretrial double-jeopardy

claim.[48]

---

[45]  *Cf. Hereford v. State*, 339 S.W.3d 111, 118 (Tex. Crim. App. 2011) ("In its review, the appellate court does not perform its own fact-finding mission, but limits the scope of its factual review to determining whether the trial court's findings were reasonable in light of the evidence presented.").

[46]  *See Allen*, 656 S.W.2d 592, 594–95 ("[W]e will not infer consent from a silent record.") (citations omitted).

[47]  *McClendon*, 583 S.W.2d at 780–81.

[48]  *See Hill*, 90 S.W.3d at 311–12.

This means that, at the hearing on Garrels's pretrial application, it was the State's burden either to identify some record-based indication that Garrels had impliedly consented to the trial court's mistrial order, or else to introduce evidence to that effect. But the only fact that the State marshaled in support of the conclusion that Garrels had impliedly consented to the mistrial was the lack of an objection on the record: "I think based on the case law we cited in our answer, in the absence of [an] objection on the record [when] given an adequate opportunity to do so . . . [i]t's deemed that the defense [ha]s impliedly consented to the mistrial." In its brief on direct appeal, the State made this same point again, this time adding the nuance that "the appellant stood by silently during a lengthy discussion with the State regarding whether a mistrial should be declared." Finally, in its brief before this Court, the State argues that "the record supports the conclusion that the appellant did not oppose the mistrial," largely because of Garrels's "inaction."

But, as was noted in oral argument, the question is not whether Garrels did enough to "oppose" the mistrial[49]—it is whether the State carried its burden to show that she in fact "consented" to it.[50] And in each of these instances, the State has pointed to a silent record in support of a point upon which it carried the burden. A silent record is, almost by

---

[49] *Contra* State's Brief on the Merits at 14 ("[T]he appellant sat idly by and never suggested she opposed the mistrial"); *id.* at 16 ("If she were actually interested in preserving the right she now claims was violated . . . she would have somehow voiced her opposition to the mistrial."); *id.* at 17 ("[T]he appellant's inaction was insufficient to apprise the trial court that she opposed a retrial[.]").

[50] *Torres*, 614 S.W.2d at 441 (citations omitted).

definition, a lack of evidence to support either position; and a lack of evidence is held against the party bearing the burden on a particular issue.[51] So, even viewing the record with the appropriate deference towards the trial court's ruling, there is simply no record-based evidence upon which the trial court might reasonably conclude that Garrels consented to the mistrial.

To the contrary, the record abundantly supports the conclusion that Garrels did not want the case to be mistried—and that the trial judge and prosecutor understood as much. From the beginning, the trial judge described his mistrial order as a *sua sponte* decision: "I'm going to declare [a mistrial], not grant it, because no one's asked for one[.]" He later added, "I'm just going to grant a mistrial on my own. Y'all can deal with it and decide what to do going forward." One of the prosecutors also made comments bolstering the idea that Garrels did not want a mistrial: "[T]he defense has not requested a mistrial. I believe that you need a manifest necessity to declare a mistrial. You are free to grant a mistrial, generally, but I believe that would bar us. If the defense wanted to request a mistrial in lieu of [excluding] the testimony, that would be different." Finally, we note that Garrels only ever requested one form of relief on her discovery objection: to exclude the officer's testimony and, crucially, proceed with trial. In light of this, and given the multiple instances in which the trial judge and prosecutor noted that Garrels was not actually seeking a mistrial,

---

[51] *Cf. State v. Kelly*, 204 S.W.3d 808, 819 (Tex. Crim. App. 2006) ("[T]he party with the burden of proof assumes the risk of nonpersuasion.").

her failure to clarify that she in fact opposed the mistrial is not particularly probative.

## IV. CONCLUSION

A trial court's characterization of a mistrial as a *sua sponte* act does not preclude the State from carrying its burden on the issue of consent; as the State points out, a defendant may consent to a mistrial without expressly moving for one. But, in this case, the lack of record-based evidence affirmatively showing how Garrels "impliedly" consented to the mistrial defeats the State's position. The State had ample opportunity, both at the initial trial and at the hearing on Garrels's pretrial application for a writ of habeas corpus, to adduce evidence supporting its claim that Garrels had impliedly consented to the mistrial.[52] It failed to do so, and so the claim is without merit.

For concluding otherwise, the court of appeals' judgment is reversed. We remand the case for that court to determine whether the mistrial was supported by manifest necessity.

Delivered: September 19, 2018

Published

---

[52] *See McClendon*, 583 S.W.2d at 780–81.