

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-22-00283-CR

**EX PARTE** Amanda Marie **MONTOYA**

From the 227th Judicial District Court, Bexar County, Texas
Trial Court No. 2016CR11671
Honorable Kevin M. O'Connell, Judge Presiding

Opinion by:    Luz Elena D. Chapa, Justice

Sitting:    Luz Elena D. Chapa, Justice
Irene Rios, Justice
Lori I. Valenzuela, Justice

Delivered and Filed: June 7, 2023

AFFIRMED

This is an appeal from the trial court's order denying appellant Amanda Marie Montoya's request for pretrial habeas relief. On appeal, Montoya contends the trial court erred in denying her pretrial habeas application because double jeopardy bars the State's attempt to retry her for murder. We affirm the trial court's order.

## BACKGROUND

Montoya was charged with murder, manslaughter, and aggravated assault in a dating relationship regarding the death of Cesar Gallegos on March 24, 2016. Trial occurred in February 2020, and on the first day of trial, the State disclosed its plea bargain offer of a cap of eighteen years opposed to Montoya's application for deferred adjudication in exchange for Montoya's plea to the aggravated assault count. Montoya chose to proceed with trial, and a jury was selected and

sworn in that day. The State proceeded by calling several witnesses. One of the witnesses, Leticia Garza, testified she lived on the same property as Gallegos, and on the evening of March 24, she saw Gallegos and Montoya socializing and drinking outside. Garza testified when she was getting ready for bed, Gallegos and Montoya were dancing outside to music. She testified she went to sleep but then woke up when she heard loud banging at her front door. According to Garza, Montoya was banging on her door and exclaiming she had accidentally shot Gallegos. Garza testified she called her boyfriend, who told her to call 9-1-1. After she called 9-1-1, the police arrived at the scene. The jury also heard testimony from police and firefighter personnel, who testified when they arrived at the property, they found Gallegos lying unresponsive in his bed with a gunshot wound. Gallegos was pronounced dead at the scene.

The trial court recessed for a short break, and outside the presence of the jury, the prosecutor informed the trial court she had learned two DNA swabs had not been disclosed to her or defense counsel. One of the DNA swabs was of the alleged murder weapon and the other DNA swab was of the blood sample found on the weapon. The prosecutor explained she was learning of the DNA swabs for the first time. Montoya requested a mistrial arguing the newly discovered evidence changed the circumstances of how Gallegos's death may have occurred and therefore impacted her defense. The trial court denied Montoya's request.

The next day Montoya re-urged her mistrial motion, and the trial court held a hearing on the motion outside the presence of the jury. During the hearing, Detective Tom McNeely testified he had been responsible for preparing the original package of evidence in 2016 for the Bexar County District Attorney's Office. He testified the original package did not contain the two DNA swabs, and the swabs came to his attention when he was preparing the package of evidence for the 2020 trial. He also indicated a report prepared by the officer who collected the swabs had never been submitted to the District Attorney's office. According to Detective McNeely, when the

evidence was originally collected in April 2016, he had requested the weapon be swabbed, but he never followed up on whether the weapon was swabbed. He testified it was an oversight on his part. The trial court ultimately granted Montoya's mistrial request and ordered the swabs be tested.

Before the State retried the case, Montoya filed a pretrial application for writ of habeas corpus, arguing double jeopardy barred a retrial when the mistrial was caused by government misconduct. After a hearing, the trial court denied Montoya's pretrial application, and Montoya filed this appeal.

## ANALYSIS

### *Standard of Review*

We review a trial court's decision to grant or deny relief requested in a pretrial habeas application based on double jeopardy under an abuse of discretion standard. *See Ex parte Martinez*, 560 S.W.3d 681, 695 (Tex. App.—San Antonio 2018, pet. ref'd). In applying this standard, we "review the record evidence in the light most favorable to the trial court's ruling." *Id*. (quoting *Kniatt v. State*, 206 S.W.3d 657, 695 (Tex. Crim. App. 2006)) (internal quotation marks omitted). We afford great deference to the trial court's findings and conclusions, especially if they involve credibility and demeanor determinations. *Id*. Merely because we may decide the matter differently than the trial court is insufficient to constitute an abuse of discretion; instead, to reverse a trial court's decision on a pretrial habeas application, we must determine the trial court's ruling was outside the zone of reasonable disagreement. *Id*.

### *Applicable Law*

"The Double Jeopardy Clause of the Fifth Amendment protects a criminal defendant from repeated prosecutions for the same offense." *Oregon v. Kennedy*, 456 U.S. 667, 671 (1982) (internal footnote omitted); *Ex parte Lewis*, 219 S.W.3d 335, 353 (Tex. Crim. App. 2007). As part of this protection, it "affords a criminal defendant a 'valued right to have his trial completed by a

particular tribunal.'" *Kennedy*, 456 U.S. at 671–72 (quoting *Wade v. Hunter*, 336 U.S. 684, 689 (1949)). However, a criminal defendant is not guaranteed the State's case will be resolved in one proceeding. *See id*. at 672.

For example, in cases "[w]here the trial is terminated over the objection of the defendant, the classical test for lifting the double jeopardy bar to a second trial is the 'manifest necessity' standard," which covers situations like when a jury cannot reach a verdict. *Id*. (quoting *United States v. Perez*, 9 Wheat. 579, 580, 6 L.Ed. 165 (1824)). But, when, as here, a mistrial is declared at the defendant's request, different principles apply. *Id*. This is because "[a] defendant's motion for a mistrial constitutes a deliberate election on his part to forgo his valued right to have his guilt or innocence determined before the first trier of fact." *Id*. at 676 (quoting *United States v. Scott*, 437 U.S. 82, 93 (1978)) (internal quotation marks omitted). When the trial court grants a defendant's mistrial motion, a defendant may invoke the double jeopardy bar only when "the conduct giving rise to the successful motion for a mistrial was intended to provoke the defendant into moving for a mistrial." *Id*. at 679. In such cases, it can "be said that the prosecutor, rather than the defendant, has exercised primary control over the decision to seek the trial termination." *Lewis*, 219 S.W.3d at 358–59.

"Prosecutorial conduct that might be viewed as harassment or overreaching . . . does not bar retrial absent intent on part of the prosecutor to subvert the protections afforded by the Double Jeopardy Clause." *Kennedy*, 456 U.S. at 675. It is "[o]nly where the governmental conduct in question is intended to 'goad' the defendant into moving for a mistrial." *Id*. In the context of habeas, the burden is on the applicant to prove her double jeopardy allegation by a preponderance of the evidence. *Martinez*, 560 S.W.3d at 695. If the applicant has met this burden, it is the State's burden to introduce evidence of the applicant's consent to the order terminating her first trial. *See Ex parte Garrels*, 559 S.W.3d 517, 524 (Tex. Crim. App. 2018).

*Application*

Montoya argues Detective McNeely's failure to disclose the DNA swabs before the February 2020 trial amounted to the governmental misconduct necessary to invoke the double jeopardy bar. According to Montoya, the detective's oversight denied her access to relevant evidence before her first trial and denied her the opportunity of accepting the State's plea offer to resolve her case.

To determine whether double jeopardy bars the State from retrying Montoya, and thus whether Montoya is entitled to habeas relief, we must decide whether the prosecutor's conduct "was intended to provoke [Montoya] into moving for a mistrial." *See Kennedy*, 456 U.S. at 679. Here, the record shows the prosecutor learned of the undisclosed DNA swabs on the first day of trial, and she brought her concern regarding the undisclosed evidence to the trial court's attention as soon as she first learned it had not been disclosed. When viewing this evidence in the light most favorable to the trial court's ruling, we conclude the trial court did not abuse its discretion in concluding the prosecutor's conduct was unintentional and did not amount to goading the defense into requesting a mistrial. *See id.*

Montoya, however, contends Detective McNeely's oversight amounted to the governmental misconduct necessary to invoke the double jeopardy bar because the detective is an agent of the State. Montoya's argument requires us to impute the conduct of the detective to the prosecutor, but there is no evidence indicating Detective McNeely was part of the prosecutor's team or assigned or worked under the District Attorney's direction. *See State v. Rushing*, No. 09-16-00423-CR, 2017 WL 4182316, at *7 (Tex. App.—Beaumont Sept. 20, 2017, pet. ref'd) (not designated for publication) (holding conduct of employees in sheriff's office could not be attributed to State's prosecutor's team because no evidence they were employed by District Attorney); *Henderson v. State*, No. 13-16-00242-CR, 2019 WL 1561996 (Tex. App.—Corpus

Christ-Edinburg Apr. 11, 2019, no pet.) (mem. op., not designated for publication) (rejecting argument that law enforcement conduct amounted to prosecutorial misconduct because no evidence law enforcement officer worked for District Attorney); *but see State v. Mutei*, 2017 WL 542025, *6, 2017 WL 542025, **16-18 (Tex. App.—El Paso Feb. 10, 2017, pet. ref'd) (considering conduct of detective who testified in its double jeopardy analysis because "there does not appear to be a bright line rule that would prohibit a trial court from imputing the wrongful conduct of a State's witness to the prosecution").

Even if the trial court attributed Detective McNeely's conduct to the prosecutor, there is no evidence indicating the detective intended to provoke Montoya into requesting a mistrial. The record shows although Detective McNeely requested the weapon be swabbed in April 2016, he never followed up as to whether the weapon was swabbed or whether the swabs were tested. He testified it was "an oversight on [his] part," and he agreed it was evidence he should have sent to the District Attorney. Again, when viewing the record in the light most favorable to the trial court's ruling, we cannot conclude Detective McNeely's oversight showed intent to subvert the protections afforded by the Double Jeopardy Clause and goad Montoya into moving for a mistrial. *See Kennedy*, 456 U.S. at 675. Accordingly, we hold the trial court did not abuse its discretion in denying Montoya's pretrial application for writ of habeas corpus.

## CONCLUSION

Based on the foregoing, we affirm the trial court's order denying Montoya's pretrial application requesting habeas relief.

Luz Elena D. Chapa, Justice

Do Not Publish